12    75<br>28 SC ›312

## DANIEL DOBBINS v. HIRAM L. BROWN and JOSEPH H. WILLIAMS.

1. A covenant of warranty "against the grantor and his heirs, and against all and every other person or persons lawfully claiming or to claim," is not broken by the entry and occupancy of the Commonwealth, in the exercise of its right of eminent domain. Such entry and occupancy do not amount to an eviction of the ground taken for public use.

2. A release of damages for such entry and occupancy, executed before the conveyance with warranty, is not an eviction. It merely forestalled the compensation, and is a clog on the enjoyment.

ERROR to the Common Pleas of Erie.

*Sept.* 27. This was an action of covenant brought by Brown and Williams against Dobbins, upon a covenant of warranty in a deed.

On the trial the plaintiffs gave in evidence a deed, dated February 6, 1839, by which Dobbins conveyed to them certain lots, and by which he, as party of the first part, his heirs, executors, and administrators, promised, covenanted, &c., with the grantees, their heirs and assigns, that he and his heirs the premises thereby granted, &c., unto the party of the second part, "against him and

his heirs, and against all and every other person or persons whomsoever, lawfully claiming or to claim, shall and will warrant and for ever defend by these presents."

They also gave in evidence a release executed by the defendant to the Commonwealth, on 2d December, 1829, by which, in consideration of the benefit to him from the Pennsylvania Canal passing through the said lots, he agreed, for himself, his heirs and assigns, that the agents of the Commonwealth might enter upon, occupy, use, and keep so much of his land as might be necessary for a canal, &c., and released all claims for damages for land so taken, &c.

They then proved that in 1840, the Erie Extension Canal was laid out and constructed, notwithstanding the prohibition of the plaintiffs to the contractor, across the said lots, occupying nearly one-third of their surface.

The defendant then called many witnesses to prove that the value of the lots was enhanced by the canal passing over them, and that the residue of them was worth more than the whole would have been worth without the canal. He also put in a patent from the Commonwealth, dated 30th January, 1839, to himself for these lots, with the usual recital of being clear of all restrictions and reservations.

The plaintiffs' rebutting evidence went to the effect that the lots would have been much more valuable without, than with the release.

The plaintiffs then requested the Court to charge the jury that the evidence of the defence was irrelevant and to be entirely disregarded; secondly, as to the measure of damages, and thirdly, that the release to the Commonwealth having been given prior to the covenant of warranty in the deed to the plaintiffs, the latter was broken at the time it was given, and therefore the plaintiffs were entitled to some damages.

The defendant requested the Court to charge—

1. That the release is void for uncertainty, so far as it respects the defendant's estate in the lots conveyed to plaintiffs.

2. That if the said release conveyed to the Commonwealth any estate in the lots sold by defendant to plaintiffs, the patent in evidence from the Commonwealth to the defendant conveyed all such estate back again to defendant for plaintiffs' use, and the whole estate in the lots in question was therefore vested in the plaintiffs before the construction of the canal over them in 1840.

The Court below (CHURCH, President) charged as follows:

" The whole case resolves itself into two questions : The *right* of recovery, and the rule or measure of damages.

" In the ordinary case of action on a warranty, after eviction, the measure of damages becomes a matter of law, and is the purchase-money paid, with interest, not from the time paid, but from time of eviction. So in case of a partial eviction, damages *pro rata* are recoverable, the price paid being the *data* of the value. There may be cases, undoubtedly, where a partial eviction would be equivalent in this respect to a total one, and so treated. These are general principles.

" The price here paid for the four lots was twelve thousand five hundred dollars. This purchase-money has been all paid, and this amount is the actual value of the lots so far as is material for us. The alleged breach of warranty is the eviction by the Commonwealth, under a prior authority or license given by defendant. This eviction, it seems, is but a partial one, in point of fact, thus far. Was this eviction to the prejudice of plaintiffs, and one warranted against by defendant ? Certainly, but not absolutely and without qualification.

" It is true the Commonwealth have the right exercised, under certain conditions, provided for in the constitution (§ X., Bill of Rights); for without it makes just compensation, it is not easy to find in it even any other rights than has any private citizen, except it be that it may exercise the right, and then make compensation ; whereas a private citizen must precede it with the compensation and the consent of the owner. The consent may be already considered as given to the Commonwealth by every citizen owning property, yet it must be understood upon the express stipulations of the constitution. That right itself may be considered inherent in the government; so is the right to compensation in the citizen. This general warranty in the deed is not broken by the mere exercise of this right on the part of the Commonwealth. But then this right of the citizen to require damages, or compensation therefor, is so complete and extensive that it cannot be abridged by statute. The right is reserved to the citizen by the constitution, and there is no legislative authority to take it away or diminish it. This right then is warranted to plaintiffs by this deed. And if this right was released or conveyed, and so destroyed by the warrantor prior to his warranty to plaintiffs, it is very clear that upon the eviction under it the covenant is broken, and the warrantee or covenantee is entitled to recover from his warrantor. This is most certainly

right and just, and nothing more. Upon this principle we charge you the plaintiffs are entitled to recover, if such a state of facts is shown.

"Now let us see what appears in this case: Defendant conveys to plaintiffs certain lots for a certain consideration paid. He warrants and defends all that his deed purports to convey. That includes this right to recover damages or compensation from the Commonwealth in case it takes it for public use. Before this conveyance, however, defendant for a consideration granted the right exercised to the Commonwealth, and relinquished all his right to demand compensation. He has thus sold to plaintiffs and been paid for, and warranted and covenanted to defend, what he did not own. These facts thus appearing in the testimony, the Court charge you plaintiffs are entitled to recover."

(The Court then instructed the jury upon the measure of damages, and proceeded to answer the points.)

The third point of plaintiffs was answered in the affirmative; and the first and second of the defendant in the negative.

The verdict was in favour of plaintiffs for $4812.50, on which, a new trial having been moved for and refused, judgment was entered.

In this Court the following assignment of errors was made:

1. The answer to the defendant's first point.

2. The answer to the defendant's second point.

3, 4, 5. The answer and charge respecting the measure of damages.

*Walker* and *Babbitt*, for plaintiff in error.—This is not a case of warranty, where there has been failure of title, or eviction in whole or in part of the premises. The Commonwealth had the right to construct the canal over these lots, and the release of Dobbins was not a conveyance of the land, or of any part of it, but a mere acquittance of his right to damages. It was given under the Act of 1827, P. L. 199, and of 1828, P. L. 224, authorizing the Canal Commissioners to receive such acquittances, not conveyances. That this release is a mere acquittance of damages, see Commonwealth *v.* Fisher, 1 Pa. Rep. 467. That being so, the fee of the entire lots is in Brown and Williams, and all they have lost is the claim to damages for constructing the canal. Dobbins should stand to them in place of the Commonwealth, and liable for all they would have been legally entitled to from the Commonwealth, and no more. The vendees

have these lots, subject only to a right of way over part of them; and they have the price of that right in the "benefits of the canal," the consideration of the release.

The burthen of the argument was as to the measure of damages, but as the case turned upon another point, that portion of the argument is omitted.

*Galbraith* and *Riddle*, contrà.—If the release grants an easement to the Commonwealth, that is guarantied against by this covenant, which was broken by that previous grant. To the extent of that grant the right conveyed was curtailed.

The title warranted to us was not dependent upon any contingency, or subject to any encumbrance: it was to be presently and for ever in our control, use, and possession. That covenant was broken by the release, which is a conveyance unlimited in duration and in dominion. It is an unlimited release to the lord paramount, and passes the fee as bargain and sale would do to an individual: Shep. Touchstone, c. 19, tit. *Release.*

The opinion of this Court was delivered by

GIBSON, C. J.—In England, the feudal warranty was superseded by a covenant of warranty, which, in turn, seems to have given place in that country, but in few of the American States, to what conveyancers call the five common covenants of title; namely, a covenant of seisin, a covenant that the grantor had a right to convey, a covenant for quiet enjoyment, and a covenant for further assurance: for the last of which Chancellor Kent substitutes the covenant of warranty, still retained by us; and on which this action is brought. It has been thought by country scriveners, and even by members of the profession, to contain the elements of all the rest; but the terms of it are too specific to secure the grantee against every disturbance by those who may have a better title. It binds the grantor to defend the *possession* against every claimant of it by right; and it is consequently a covenant against rightful eviction. To maintain an action for a breach of it, as may be seen in Clark v. McAnulty, 3 S. & R. 364, Paul v. Witman, 3 W. & S. 407, and in the cases collected in a note to 4 Kent, 471, an eviction must be laid and proved; not necessarily by process or the application of physical force, but by the legal force of an irresistible title. There must be proof at least of an involuntary loss of the possession.

Such being the nature of the covenant, is the act laid in the declaration within it, and a breach of it?

It will scarce be thought that a covenant of warranty extends to an entry by the authority of the State, in the exercise of its eminent domain. Like any other covenant, it must be restrained to what was supposed to be the matter in view; and no grantor, who warrants the possession, dreams that he covenants against the entry of the State to make a railroad or a canal; nor can it be a sound interpretation of the contract that would make him liable for it. An explicit covenant against all the world would bind him; but the law is not so unreasonable as to imply it. The entry of the public agents, and the occupancy of the ground, were not a breach of the warranty.

Nor was it an eviction even of the ground taken for public use; certainly it was not a disseisin. The entry was on the enjoyment of an easement, which was, at most, a disturbance that left the seisin and a qualified use of the possession, in the grantee. If the subject-matter were, in other respects, within a covenant for quiet enjoyment, the public invasion of it might have been a breach of it, but it was not an eviction. In contemplation of law, the grantee was still the owner and possessor, and might have gained an indefeasible title to the property, by the statute of limitations, against an adverse claimant by superior right. He might continue to do any act of ownership consistent with the public franchise, reserved from the beginning. He might lay pipes or open a quarry under the canal; or enter on any other enjoyment of the soil, that would not interfere with the works, or impede the navigation.

Was the antecedent release of ultimate compensation, an eviction? An eviction of what? Of a right to claim. Strange subject of an eviction! Having been executed before the conveyance, the release, if an eviction of any right, was an eviction of the grantor's right; for the grantee could not be evicted of what he had not received. The construction of the canal was subsequent to the conveyance; and if there was an eviction at all, it was not by the sealing of the release, but by the entry of the State, which we have seen was not a disseisin within the warranty. The release was, if possible, still less so. The claim to compensation being no more than the benefit of a chance, was an ideal thing; and, though of appreciable value, it would not have fallen within the ancient warranty, which had regard to things corporeal, and differed from its successor chiefly in regard to the voucher to warranty, and the

recompense in value.   It therefore cannot fall within the modern covenant.

A part of the argument has been, that the release passed a right of entry to the State, as well as extinguished the compensation for it.   But the releasor could not convey a right that was in the State from the beginning, and one that could be exercised without his consent on the single condition of compensating the owner.   The release forestalled the compensation, and it did no more.   It was not a breach of a subsequent and prospective covenant, not even against encumbrances; and running, as it did, with the land, it could not, by any construction, be more than a clog on the enjoyment.

This decision of the principal matter rules the cause, and relieves us from the consideration of anything else.

Judgment reversed.