# Murphy *versus* Richardson.

1. When a vendor by articles covenants to convey a title "clear of encumbrances" and afterwards makes to the vendee a deed with special warranty, in an action on a mortgage given for the purchase-money, the vendee may prove that there is an outstanding right in a third party to enter, mine, and carry away the coal in the land conveyed.

2. It is error for the court to reject the deeds showing such outstanding right.

3. Whether such evidence when given would be available as a defence, whether the vendee bought subject to the defect, or agreed to take the title at his own risk, or whether the right set up is capable of assertion, or one that is derelict, stale and abandoned, or whether worth anything if capable of being asserted, were matters of after consideration, but could not be considered by the court in ruling a question of evidence.

4. The deeds, and whatever else had a direct reference to the character and value of the outstanding easement, should have been admitted in evidence, and then the peculiar rules of law as to the vendee's right to detain purchase-money, which prevail in this state, could be safely and intelligibly applied.

5. Whether the right set up were worthless, abandoned, or the title taken at the risk of the vendee, were questions of fact for the jury.

6. Where the old deeds showing the outstanding right were on record, this was constructive notice to the vendee, but was not conclusive of such actual knowledge as would imply his consent and intention to take the risk of the title, where none of the title papers delivered to him exhibited the defect nor contained any covenant against it.

ERROR to the Common Pleas of *Schuylkill county*.

The plaintiff, William Richardson, brought this *scire facias* on a mortgage against Michael Murphy, the defendant, to recover the sum of $2500. The defendant pleaded payment with leave to give the special matter in evidence. On the trial, the plaintiff gave in evidence the mortgage and accompanying bond, and there rested.

The defendant showed various payments upon the same, and under the notice of special matter previously given, proved—that on the 10th April, 1847, the plaintiff and John R. Brick, by articles of agreement, covenanted to sell and convey to him, "clear of all encumbrances," two lots in the borough of Pottsville, designated in the general plan of the town as numbers 1 and 2, being each 60 feet in width and 230 feet in depth. Murphy to

pay $7000 for the lots in question—$2000 in cash at the execution of the deeds, and the remaining $5000 in annual instalments of $1000, with interest payable semi-annually, to be secured by bonds and mortgages, and payable to Richardson and Brick in equal proportions.

By deed dated 1st May, 1847, Richardson and wife conveyed the one undivided moiety to Murphy, and Brick procured Robert Smethurst, in whom the title to the other undivided half was vested, to also convey by deed of the same date to the same party. These deeds contained only covenants of special warranty, and were respectively acknowledged on the 27th day of May, 1847. The bond and mortgage were of the same date as the deed, and the mortgages were acknowledged 5th July, 1847.

The subscribing witnesses to the bond and mortgage were called, but had no distinct recollection of anything that occurred at the execution and delivery of them. F. W. Hughes, Esq., stated that he was counsel for Murphy at the time, and that the papers were left with him by the plaintiff to examine, and that he approved of them.

The defendant then offered to prove that the title to a large body of land, of which these lots are a part, was vested in Isaac Thomas, and that he, by deed dated 20th June, 1796, conveyed all the fossil or stone coal, with the right of entering upon and mining and carrying away the same, in that tract, to John Potts, Thomas Potts, Joseph Potts, Jr., David Potts, Jr., and Robert E. Hobart, and their heirs; which deed was recorded in Berks county, and afterwards in Schuylkill. That the land upon which the town of Pottsville is located, being part of the same tract, was conveyed to John Potts, on the 17th April, 1808, with a reservation of the coal and the right of mining in favour of Thomas Potts and others, and tracing the title to the lots in question through various conveyances to the plaintiff and his co-tenants in common. In connexion with which he offered to prove that about fifty dollars of taxes remained due and unpaid at the time of the conveyance to him, and which he was compelled to pay. And that the plaintiff had represented to him that the deed was in accordance with the agreement; that he was unable to read the deeds himself; and that there is a large quantity of stone coal in the lots; and that by reason of the encumbrance or outstanding right of the coal grant, he was prevented from making an advantageous sale of the lots, and particularly to the commissioners of Schuylkill county, for the purpose of locating the court house and other public buildings; and that the deeds and mortgages were prepared and produced by the plaintiffs.

This was objected to by plaintiff, and rejected by the court, except so far as related to the payment of taxes.

[Murphy *v.* Richardson.]

The court below (HEGINS, P. J.) directed the jury to find a verdict for the plaintiff for the amount of the mortgage debt still due and unpaid, with interest.

The jury found for the plaintiff $1274.50, and judgment was entered accordingly.

The defendant sued out this writ, and assigned here for error, rejection of the evidence above stated.

*Campbell* and *Bancroft*, for plaintiff in error.—The principle was solemnly decided in 1815, by C. J. TILGHMAN and his associates, and in many cases since, that for defective or encumbered title, the vendee could make defence to the payment of the purchase-money. And he was entitled to have his case tried and damages assessed by a jury: Steinhauer *v.* Witman, 1 *S. & R.* 438; Hart *v.* Porter, 5 *Id.* 204; Poke *v.* Kelly, 13 *Id.* 165; Christy *v.* Reynolds, 16 *Id.* 558; Todd *v.* Beale, *Id.* 263; Withers *v.* Atkinson, 1 *Watts* 248; Roland *v.* Miller, 3 *W. & S.* 393; Sillyman *v.* Miller, 3 *Wh.* 539; Share *v.* Anderson, 7 *S. & R.* 42; Freedly *v.* Sheets, 9 *Id.* 156; Foster *v.* Gillam, 1 *Harris* 340.

*J. Hughes* and *Parry*, for defendant in error.—The alleged coal right, if any such now exists, operating as it did by way of exception, was not an encumbrance of any sort; and if it were, it was not created by Richardson; and lying in the channel of the title Murphy was purchasing, and being on record, he was bound to take notice of it, and consequently its existence was not a defence on the ground of failure of consideration: Baker *v.* McDowell, 3 *W. & S.* 360. The presumption of law is that the acceptance of a deed in pursuance of articles, is a satisfaction of all previous covenants; and as there was no covenant against the alleged coal right, the presumption is, that the grantee agreed to take the title at his own risk: Seitzinger *v.* Weaver, 1 *Rawle* 384; Share *v.* Anderson, 7 *S. & R.* 43; Crozier *v.* Russell, 9 *Id.* 78; Alexander *v.* Kerr, 2 *R.* 90; Lighty *v.* Shorb, 3 *P. R.* 450; Woods *v.* Farmere, 7 *Watts* 565; Jacques *v.* Weeks, 7 *Id.* 251.

2. That the evidence offered did not tend to establish a defence against the payment of the purchase-money, for it did not appear and it was not proposed to prove that there was any person claiming the coal right created by the deed of 1796, or that any person had ever claimed or asserted a right to it; but it did appear from 1808, that its existence had not been recognised by any of the conveyances for more than forty-three years before the institution of the suit. The opinion of this court in Ludwig *v.* Huntzinger, 5 *W. & S.* 57, fully sustains the ruling of the court in this case, and is conclusive in favour of an affirmance of the judgment.

[Murphy v. Richardson.]

The opinion of the court was delivered by

WOODWARD, J.—Though there was palpable error in the trial of this cause, it is most likely a result substantially right was reached; and if we could make the conjectural rectitude of result cancel the error of the trial, the judgment could be affirmed. But this cannot be done, because we are to see not only that justice is administered to parties, but that it is administered in due course of law. What was the case?

The parties having sold and purchased by articles of agreement two certain lots in the borough of Pottsville, "*clear of all encumbrances,*" Richardson made a deed to Murphy, in execution of the articles, with covenant of special warranty, and took a bond and mortgage for the unpaid portion of the purchase-money. This action is a *scire facias* on that mortgage. The pleas were, payment with leave to give special matters in evidence which were set forth in a written notice duly served on the plaintiff.

On the trial the defendant was permitted to give evidence in support of so much of his special matter as related to the articles of agreement, and the deed under which he held the lots; but when he offered certain other deeds, mentioned in his notice, for the purpose of showing an outstanding right to the coal in the land he purchased, they were rejected, and herein there was error.

The coal right was distinctly defined by the deed of Isaac Thomas to John Potts and others, dated 20th June, 1796, as "·all stone or fossil coal that may be found on one undivided half part of 2786 acres before described, and the privilege of searching for, raising, and removing it, and of erecting such improvements as they may think necessary in prosecuting the business, they paying for the land they may occupy, and any damage they may do the property, according to a valuation." The title having vested subsequently in Lewis Reese, he conveyed by a deed of 27th April, 1808, the land to John Potts, reserving to Thomas Potts and others the aforesaid coal right; and it is the title derived from John Potts under this conveyance that the plaintiff held when he made the articles with the defendant. The lots in question are part of the large tract.

Why was it not competent for the defendant to show the outstanding interest? He had agreed to pay a round price, and had stipulated for a title " clear of all encumbrances," and had taken no covenant of warranty that would enable him to recover damages in case of eviction. If, therefore, this was a real and valuable interest in the land, the only chance he had to compel the plaintiff either to convey it to him or to compensate him for its loss, was to take defence against the demand for the balance of the purchase-money. It is undoubtedly the law in Pennsylvania that a purchaser of land, sued for purchase-money, may show in defence an existing encumbrance or an outstanding title. Whether it will

[Murphy *v.* Richardson.]

avail him, when shown, depends on a variety of considerations, such as whether he bought subject to the defect, and agreed to take the risk of it—whether it is a right that is capable of assertion, or one that is derelict, stale, and abandoned—and whether it is worth anything if capable of being asserted. This last inquiry would have become peculiarly pertinent in this case, for the coal right, as we have seen, existed in a large tract of land, of which these town lots, only 60 by 230 feet, were a very inconsiderable part. A coal right that may have been exceedingly valuable as to every part of it when exercisable in a large tract of land, would be greatly impaired, perhaps totally destroyed, by splitting up the tract into town lots among numerous owners.

But these were subjects for after consideration, and could not properly, because they could not efficiently, be considered by the court in ruling a question of mere evidence. On what ground could the court assume that Murphy agreed to take the risk of this coal right—or that it was abandoned, or worthless? Either or all of these things may have been true, but they were conclusions of fact and not of law, and therefore for the jury and not for the court. And yet, without assuming these or similar conclusions to be true, they could not have rejected the evidence.

The deeds should have been admitted in evidence, and whatever else had a direct reference to the character and value of the outstanding easement, and then, in view of the whole case, the rules of law as to the vendee's right to detain purchase-money which prevail in Pennsylvania, and which are somewhat peculiar, could have been safely and intelligibly applied.

These rules have been frequently discussed, from the case of Steinhauer *v.* Whitman, 1 *S. & R.* 438, down to the late case of Beaupland *v.* McKeen & Pursell, ante, page 124. Perhaps the best summary of them that has been given is that by Judge GIBSON, in Lighty *v.* Shorb, 3 *Penn. R.* 447, in these words: "Where there is a known defect, but no covenant or fraud, the vendee can avail himself of nothing, being presumed to have been compensated for the risk in the collateral advantages of the bargain. But where there is in fact a covenant against a known defect, he shall not detain the purchase-money unless the covenant has been broken—in other words, he shall be bound to perform his engagement wherever his knowledge and the state of the facts continue to be the same they were at the time of the conveyance." In that case the title papers were delivered to the purchaser with the defect patent on their face, and he took a covenant of general warranty for his protection. That therefore was a case of known defect. But was this? Murphy has knowledge now of the outstanding title, but had he the same knowledge when he accepted the plaintiff's deed? That is a question of fact which is unascertained in the cause. To assume that he had, and reject his evidence, is, indeed, to decide his cause but not to try it.

[Murphy v. Richardson.]

There were no title papers delivered to him exhibiting the defect, and no covenant against it. The only fact on which an assumption of his knowledge can rest, is that the old deeds were on record and lay in the channel of the title. This was constructive notice, like the outstanding right of dower in Hart v. Porter, 5 S. & R. 204, but was not conclusive of such actual knowledge as would imply his consent and intention to take the risk of the title. Had he taken a covenant that would have covered the defect, the implication of actual knowledge would have been irresistible: Fuhrman v. Loudon, 13 S. & R. 386. But there was nothing before the court, when the evidence was rejected, that warranted them in assuming the conclusion of fact that Murphy's knowledge in respect to the title was the same when he accepted the deed as now, and that he agreed to pay for the plaintiff's title, whatever it might be.

Counsel place great reliance on the language used by Judge KENNEDY, in justifying the rejection of evidence in Ludwick v. Huntzinger, 5 W. & S. 51, but there is no such parallel between that case and this as to make the observations of the learned judge peculiarly applicable here. The purchaser in that case, being sued for the purchase-money, offered to show that the plaintiff's title originated in a tax sale of 1781, which was so irregular as to confer no title whatever. The whole chain of title was exhibited in the offer, and the court below, doubtless deeming it sufficient, rejected the evidence as furnishing no grounds of defence against payment of the purchase-money. In affirming this ruling, Judge KENNEDY said he was inclined to think the evidence was not calculated even to raise a doubt as to the goodness of the title which the plaintiff in error received from the defendant. The ground of judgment was that the evidence *did not tend to establish an outstanding title*. On the face of the papers the title was regular, and the court strongly intimated, marketable also. But here the papers offered showed the coal right outstanding. The papers were rejected there because they showed no defect—the papers offered here should have been admitted because they showed the defect. It is difficult to conceive how that case, judged of by the point ruled, can be thought to sustain the ruling complained of here.

It is possible the court may have proceeded, not altogether nor mainly, on Murphy's presumed knowledge of the title, but rather on the presumption of abandonment from the long disuse of the coal right. Whether there had been an exercise of the right in any part of the tract, or an attempt to exercise it in these lots within such period as would rebut the presumption of abandonment from lapse of time, was not of course inquired into at that stage of the cause at which the evidence was arrested, nor was any evidence on these points contained in the offer. But suppose there had been no exercise of the right for sixty years, would it

[Murphy *v.* Richardson.]

be necessarily barred? It is scarcely proper to rule this question authoritatively now, but this may be said, that until there is some adverse possession or use of the coal right shown—some exercise of dominion over the land inconsistent with the easement existing in another, no such conclusive presumption of surrender or abandonment can be set up as would justify the court in ruling the title to the easement out of court. If, therefore, the learned judge went upon the age of this coal right, it was not ground for the rejection of the evidence.

If he considered the right worthless, though legally existing, still the evidence should have been admitted, and the value of the right submitted to the jury.

In any light in which we can contemplate the case, we cannot see that the evidence was properly rejected; and though we have reason to doubt whether its admission would have led to a different event, we feel constrained to say that for this error the judgment must be reversed and a *venire de novo* awarded.

LOWRIE, J., and KNOX, J., dissented.