DELAWARE BANK *v.* JARVIS.

One who transfers a chose in action impliedly warrants, at the least, that there is no legal defence to its collection arising out of his own connection with its origin.

The party accepting the transfer is at liberty to act upon the implied assertion of the validity of the paper, and to bring an action for its collection. When defeated, he is entitled to recover the costs incurred by him from his assignor.

So *held,* where the holder of a note, which had a usurious inception in his hands, transferred it without indorsement and without notice of the facts to the plaintiff. The latter brought an action upon the note, to which the defence of usury was successfully interposed. The defendant had notice of the plea, and was called upon to assume the conduct of the action, but declined to do so, though denying that there was any legal defence.

Whether the assignee of the note is not bound to bring an action and procure an adjudication as to its validity before he can recover upon the implied guaranty, *Quere,* per COMSTOCK, J.

APPEAL from the Supreme Court. Action to recover the amount of a promissory note, together with the costs of an action to collect it, in which the plaintiff was defeated. The trial was before Mr. Justice MASON, without jury. He found the following facts:

On the 8th August, 1849, Joseph W. Crandall and Franklin W. Crandall made their promissory note for $100, payable at the Delaware Bank four months from date, to the order of John Peters, and procured Peters to indorse the note for their accommodation. The note was made to raise money, and was sent to the Delaware Bank, who refused to discount it. The drawers then transferred the note to the defendant Jarvis, through their agent Wheeler, at a usurious premium, he (Jarvis) giving but $92 for the note; Jarvis knowing that the note was made to raise money, and had never been negotiated. Jarvis, a short time before the note fell due, procured it to be discounted by the Delaware Bank, and drew the avails thereof from the bank. He did not indorse the note, nor did he communicate the fact to the bank that the note in his hands was tainted with usury. The note fell due, and not being paid was duly protested, and a suit thereon brought against the makers, the indorser having died. The makers set up the defence of usury, and the bank, in this stage of the case, served a written notice upon the defendant Jarvis of the prosecution, and of the defence set up to the note, and desired him to take the charge of the suit, &c., inform-

ing him that the bank would hold him responsible for the note and all costs, if the note should turn out to be usurious and void. The defence was established; the note proved to be usurious, and a judgment recovered against the bank for $137.74, the taxable costs. The plaintiff's costs taxable were $137. These costs also were paid by the bank.

The judge gave judgment for the plaintiff for the note, with interest, and the costs sustained by the bank. Upon appeal the judgment was affirmed at general term in the sixth district, and the defendant appealed to this court.

*Daniel S. Dickinson,* for the appellant.

*Robert Parker,* for the respondent.

COMSTOCK, J. The judge who tried the cause, without a jury, has found, as conclusions of fact, that the note was indorsed by Peters for the accommodation of the Crandalls, who were the makers; that the makers' agent negotiated it to the defendant in consideration of a usurious loan of money; and that the defendant knew the note had not been negotiated prior to the time when he received it. On the argument it was claimed that there was no evidence to sustain so much of this finding as imputes to the defendant the knowledge here mentioned. I do not consider this a material circumstance; but if it were, it would still be the duty of this court to declare the law upon the facts as they are distinctly found. It also appears that the defendant, having become the holder of the note in the manner stated, procured it to be discounted at the plaintiff's bank without his own indorsement, and without disclosing the circumstances connected with its origin.

It is conceded that, by thus transferring a worthless security the defendant became liable to repay the money which he received in exchange therefor. This liability, it is said, arose immediately, and was limited to the amount so received. In the absence both of fraud and of warranty, express or implied, it is not easy to see on what ground the defendant would be

liable at all. The Supreme Court, in affirming the judgment rendered at the trial, appears to have placed its decision on the ground of fraud; and considering that to be the theory of the action, the conclusion was that the plaintiffs had properly recovered, as damages occasioned by the fraud, not only the sum advanced on the note, but the costs of prosecuting an unsuccessful suit against the makers, as well as the costs of the defence, which they were obliged to pay. That conclusion was reached after a considerable discussion of the point whether those items of loss were the natural result of the wrong done by the defendant so as to render him liable therefor. I am not by any means prepared to deny the general accuracy of the view which the court below seems to have taken; but I think the conclusion more obviously rests upon a ground somewhat different.

The authorities state the doctrine, in general terms, that the vendor of a chose in action, in the absence of express stipulations, impliedly warrants its legal soundness and validity. In peculiar circumstances and relations, the law may not impute to him an engagement of this sort. But if there are exceptions, they certainly do not exist where the invalidity of the debt or security sold arises out of the vendor's own dealing with or relation to it. In this case, the defendant held a promissory note which was void because he had himself taken it in violation of the statutes of usury. When he sold the note to the plaintiffs and received the cash therefor, by that very act he affirmed, in judgment of law, that the instrument was untainted, so far at least as he had been connected with its origin. I do not now state the rule more broadly, because if I were to do so it might be proper to suggest some of its possible limitations or qualifications. It is enough for the present purpose that, on the sale of the note in question, the defendant became chargeable on an implied undertaking that he held it by a right and title which would enable the purchaser to enforce it against the parties thereto.

The measure of damages recoverable on a breach of this undertaking, is next to be considered. On the part of the

defendant it has been insisted that the plaintiffs might have returned the note as worthless immediately after they received it, and at once commenced their action to recover back the money which they had advanced upon it. This is clearly so, if there was fraud in the sale. Contracts, whether executed or executory, when procured by fraud, may be rescinded by the injured party if he can and will restore the other to his previous situation. But if the plaintiffs had a right to take that course upon any ground which might be suggested, they clearly were not bound to do so. As the law gave to them a warranty against their vendor, they could seek their remedy upon it, waiving any other course of proceeding which might be open to them. Regarding the present action as founded on that undertaking, it proceeds on an affirmance instead of a disaffirmance of the transaction between them and the defendant.

The question, then, to be determined is, whether the costs, on both sides, of the unsuccessful suit against the makers of the note are a part of the damages occasioned by the defendant's breach of the implied warranty that it was a good and valid instrument. This depends on the nature and effect of the contract. On a sale of chattels with warranty of title, whether express or implied, it appears to be well settled that, in the absence of an actual dispossession under a better title, no breach can be alleged without a suit and judgment at law against the title of the vendor. It has never been held that the mere want of title, without eviction or judicial determination, will sustain an action in such cases. (*Case* v. *Hall*, 24 *Wend.*, 102, *and cases cited.*) In that construction of the contract, it becomes closely analogous to the covenant for quiet enjoyment in respect to lands. It is a familiar doctrine that a breach of this covenant does not arise without eviction, and that in an action upon it the costs incurred in the suit with the true owner of the title may be recovered as part of the damages. The principle which governs in an action of that nature has been applied by the Supreme Court of Massachusetts to the breach of a warranty in respect to the genuineness of a note or indorsement. In *Coolidge* v. *Brigham* (5 *Metc.*, 68), the suit was upon an under-

Delaware Bank *v.* Jarvis.

taking that the indorsements on a note sold by the defendant to the plaintiff were genuine; and a verdict for the plaintiff, which included the costs paid out in an unsuccessful suit against one of the indorsers whose name was forged, was sustained. "We perceive no distinction," the court observed, "in reason between such a covenant of warranty [referring to the covenant for quiet enjoyment in respect to lands] and a warranty on the sale of personal property."

In the case before us, I do not entertain any doubt that the defendant impliedly warranted against any legal defence to an action to be brought on the note. His very act of transferring it to the plaintiffs was the strongest possible assertion that no such defence existed. If they were not bound, as I think they were, to attempt its collection by legal means, they were certainly justified in so doing. In bringing their suit on the note, they acted upon a just and proper interpretation of the defendant's own conduct and of the language which that conduct implied. At that time, indeed, they had no knowledge that a defence existed or that one was pretended. What, then, were they to do when the paper matured and was unpaid? They had no indorsement or guaranty of the defendant from whom they received it. In judgment of law they had discounted it at their own risk, provided the parties were legally bound for its payment. A suit for its collection was, therefore, the natural result of the situation in which they stood. According to all the evidence in their possession, there was no other course to which they could resort. When informed of the defence by the plea of usury, they communicated the information to the defendant and requested him to take charge of the litigation. This he declined to do, still asserting that the note was free from usury. Under all these circumstances, it would be great injustice to hold that the plaintiffs instituted or proceeded with the suit in their own wrong and consequently at their own cost. We are satisfied that the undertaking of the defendant calls for no such narrow interpretation, and that the analogies of the law, not less than the demands of justice, require him to indem-

nify the plaintiffs against that expense.   The judgment must be affirmed.

   All the judges concurring,

Judgment affirmed.