## Catalano et al. *v.* Corcoran, Appellant.

*Sales Act, section 49—Sales of perishable property—Breach of warranty—Notice.*

In an action of assumpsit for breach of warranty, it is not only necessary for the plaintiff to show that there was a breach of ex-

press warranty of quality, but also essential to prove that the buyer had given notice of the breach to the seller within a reasonable time after the receipt of the goods.

Section 49 of the Act of 1915, P. L. 557, provides that if, after the acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor.

Where the plaintiffs received a car-load of grapes, which were warranted to be_of a good quality, but which were in fact badly decayed and mouldy, and failed to give notice to the seller of such breach of warranty, there can be no recovery.

Argued April 29, 1925. Appeal No. 69 April T., 1925, by defendant from judgment of C. P. Allegheny County, April T., 1922, No. 1165, in the case of Frank Catalano and Anthony R. Cianciolo, doing business as Frank Catalano and Son, v. J. E. Corcoran. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit for breach of warranty. Before CARPENTER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiffs in the sum of $2,097.25, and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were the charge of the court, answers to points, and refusal to give binding instruction in favor of the defendant.

*John H. Lauer,* of *Liddell & Lauer,* for appellant.

*E. H. Wicks,* and with him *Morris, Walker & Boyle,* for appellee.

OPINION BY LINN, J., July 9, 1925:

This suit was brought for breach of express warranty of quality of a car of grapes sold to plaintiffs by defendant, acting by a produce broker. Plaintiffs did not allege that they gave defendant notice of the alleged breach (sec. 49 of the Sales Act, 1915, P. L. 557). Defendant denied the warranty. After the

evidence was in, the court directed a verdict for plaintiffs, giving the following reason therefor: "Having cancelled his contract, the defendant could not of his own volition reinstate it. He says he had given the order diverting the car to Pittsburgh the day he received the bank guarantee. The car had not then left Cleveland, and as stated above, this fact was not known to him at that time. The railroad company was his carrier after November 3d. Its alleged failure to heed the order rediverting the car to Cleveland imposed no liability on plaintiff and did not affect his legal rights. There is no controversy respecting the loss on the grapes when sold in Cleveland. The defendant at that time was represented by his agent, Bockstahler" [the produce broker]. In other words, the court below concluded that defendant had rescinded the sale, whereby plaintiffs (who did not accede to the rescission but sued on the contract) became entitled in this suit to the return of the purchase price paid, less what they received by their sale of the car. Appellant contends that as the suit was for breach of the contract, and therefore in affirmance of it, the court could not direct a verdict on the theory that the contract had been disaffirmed.

Apellant is a wholesale produce dealer in Pittsburgh, Pennsylvania; plaintiffs are in business in Cleveland, Ohio. On October 28, 1920, through a produce broker in Cleveland, appellant sold two cars of grapes to plaintiffs; as only one is involved in this suit, that alone shall be considered. The grapes were then in transit from a shipping point in California, consigned to the order of appellant, and were expected to arrive in Cleveland, November 4th or 5th. They were sold at a fixed price, f. o. b. California, in an identified car, and as defendant testified, for "rolling acceptance." By that, we understand that the parties agreed that the property in the grapes wherever the car was then, passed to the buyer subject to payment. Plaintiffs

testified they agreed to pay for the grapes before delivery, and to furnish a bank guaranty. The record shows that on November 3d, plaintiffs' Cleveland bank notified defendant's Pittsburgh bank that it had been instructed by plaintiffs to honor defendant's draft "for $2,025.59 when accompanied by invoice and order bill of lading representing [grapes in suit] shipped to Cleveland, Ohio; covering which instructions we have issued our unconfirmed letter of credit for $2,025.59......notify beneficiary," the appellant. Defendant's contention is that the bank guaranty should have been made October 28th. On that day, defendant ordered the carrier moving the car, to divert it to himself at Cleveland, with instructions to notify plaintiffs of arrival. On each of several days after October 28th, he wired the broker who made the sale to hurry the guaranty. It was sent November 3d, reached defendant November 4th and he had the amount placed to his credit on November 5th.

Between the date of sale, October 28th, and November 4th, when he received the guaranty, defendant was an unpaid seller (sec. 52, The Sales Act, 1915, P. L. 557) who by his shipping papers had reserved property in the goods "only for the purpose of securing performance by the buyer of his obligations under the contract" (sec. 20 (second) The Sales Act, 1915, P. L. 549). As he received the bank guaranty on November 4th, (cashed on November 5th), he no longer had any interest in the transaction except to see that control of the car, so reserved, was without delay turned over to plaintiffs that delivery might be made at Cleveland. During the interval from October 28th to November 4th, he had such unpaid seller's rights as are described in The Sales Act, sec. 52, etc.; among other things, he might have rescinded and held plaintiffs for any loss; he knew the shipment was perishable and might have sold it as such (sec. 60).

How did he assert his rights? On November 2d,

"because they weren't paid for," as he testifies, and without ascertaining where the car was, and without notice to plaintiffs, he ordered the car diverted from its Cleveland destination, (toward which it was moving pursuant to his order of October 28th) to himself at Pittsburgh. On November 3d, the diverting agent advised him that the desired local delivery in Pittsburgh could not be made because of an embargo, whereupon he requested delivery at another station in Pittsburgh. On November 4th the car arrived in Cleveland, though apparently neither party then became aware of the fact. On November 4th also, he cancelled the order (of November 2d, which was superseded November 3d) diverting the cars to himself at Pittsburgh, and restored Cleveland as the destination of the car, and on November 5th mailed to plaintiffs his order addressed to one of the railway companies there, directing delivery of the car to plaintiffs "upon payment of all charges and surrender of this order." For some unexplained reason, the diversion order of November 3d (sought to be cancelled by the order of November 4th) was nevertheless put into effect November 6th by transporting the car from Cleveland to Pittsburgh, where it arrived on the 10th. Defendant, who had accepted payment from plaintiffs, then ordered it back to Cleveland where it arrived on the 15th; it was accepted by plaintiffs on or about November 18th, with the grapes in damaged condition. On that date, plaintiffs had them sold at a regular public fruit auction for less than they had paid. In February, 1922, they brought this suit for the difference between what they had paid and the net proceeds of the sale, averring that the loss resulted from an alleged breach of express warranty of quality. As plaintiffs accepted the car, after knowing that it had been sent to Pittsburgh, we need not consider what result might otherwise have followed from defendant's election to rescind the sale

by ordering the car to Pittsburgh: (Williston on Sales, 2d Ed. sec. 556).

Section 49 of The Sales Act provides: "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor." No such notice was given; at least plaintiffs neither alleged nor offered to prove notice to defendant of the breach of warranty. Defendant, and witnesses called by him, testified that when they saw the grapes in Pittsburgh on or about November 10th, they were of "good quality," the term used by the plaintiffs as descriptive of the express warranty relied on. There is evidence offered on behalf of plaintiffs that the produce broker who made the sale of the grapes, inspected the car with one of the plaintiffs when it arrived in Cleveland, on or about November 15th, and found them "very badly decayed and mouldy," but his knowledge of their condition is immaterial in the circumstances shown in the evidence. While notice to the broker after the car arrived, that plaintiffs would look to defendant for the alleged breach of warranty would not satisfy the statute, because of the restricted authority of the agency, we observe that neither plaintiffs nor the broker testified that they gave the broker such notice. The produce broker's work was complete when he negotiated the sale: Hamberger v. Marcus, 157 Pa. 133, 138.

As notice of a claim for breach of warranty was necessary under section 49, and as there is no evidence that such notice was given, "the seller shall not be liable therefor": Wright v. General Carbonic Co.,

271 Pa. 332, 337; see also Williston on Sales, 2d ed. sec. 484 a and authorities there collected. While our references for convenience are to the Pennsylvania Sales Act, the Ohio law is to the same effect: Ohio laws 1908, P. L. 413, 426, though the record is silent on the subject.

The direction to find for the plaintiffs therefore cannot be sustained; defendant's point for binding instructions should have been affirmed; the assignments of error raising those two points are sustained.

Judgment is reversed and is here entered for defendant.