## Montgomery v. Michelson.

*Sales—Implied warranty—Stolen property—Action by vendee who has not sustained loss by breach of warranty—Act of May 19, 1915.*

1. In the sale of personal property, there is an implied warranty of legal ownership by the vendor and a right of action upon the breach of such warranty, but it cannot arise until the vendee shall have been deprived of the property or shall have reimbursed his own vendee. No intermediate covenantee can sue his covenantor until he himself shall have been compelled to pay damages upon his own warranty.

2. A warranty of title to personal property is not deemed broken for the purpose of an action by the buyer so long as the real owner has not asserted his title.

3. Mere liability to loss is not sufficient to establish a cause of action.

4. Where plaintiff purchased an automobile from defendant and sold it, and, after several subsequent sales, it was discovered that the car had been stolen before the defendant innocently got possession of it, whereupon the car was turned over by the Motor-vehicle Inspector of the State of Delaware to the insurance carrier of the owner from whom it had been stolen, plaintiff cannot recover the purchase price which she paid defendant in an action based upon a breach of implied warranty of title within the meaning of section 13 of the Act of May 19, 1915, P. L. 543, in the absence of proof that she has suffered a loss of either the automobile or of the purchase price.

*Assumpsit* for breach of warranty of title to goods. M. C. Phila. Co., March T., 1926, No. 1225.

*Graham, Garaguso & Foley*, for plaintiff; *Henry J. Scott*, for defendant.

LEWIS, J., Aug. 3, 1927.—On April 6, 1921, the West Girard Avenue Branch Ford Agency sold a Ford coupé to Dr. Marian A. Rea. The automobile was stolen on Nov. 22, 1921, while parked on a public highway in the City of Philadelphia. On Dec. 15, 1921, the defendant, Michelson, having come into possession of a Ford coupé, sold it to Irene M. Montgomery, the plaintiff. The plaintiff sold the car to the Wills-Saint Claire Company, a corporation, which in turn sold it to W. C. Chapman, who in turn sold it to Walter S. Butler, Jr., who in turn sold it to J. Frederick Haines, who thereafter sold it to Edna Harrison, of Arden, Delaware.

Montgomery v. Michelson.

When the last vendee, Edna Harrison, made her application, in April of 1925, to register the title of the Ford coupé in the State of Delaware, Walter G. Hastings, a motor-vehicle inspector of the State of Delaware, while comparing the number of the automobile and the number of the engine block and noticing that the car had on it changed numbers, had it "processed" and brought out the original number. Coming to the conclusion that the automobile in question had been stolen, Hastings seized the car, and two or three weeks later he turned the automobile over to the Camden Fire Insurance Company.

The evidence does not disclose the reason for his turning over the automobile to the Camden Fire Insurance Company, except that he testified he did it in his "official capacity," and it may be assumed that it was done because that company insured Dr. Marian A. Rea against loss of the car by theft.

This action was brought by the plaintiff, Montgomery, to recover the purchase price which she paid the defendant for her Ford coupé, the action being based upon a breach of the implied warranty of title by the defendant, Michelson.

Section 13 of the Act of May 19, 1915, P. L. 543, provides: "In a contract to sell or sale, unless a contrary intention appears, there is: First, an implied warranty on the part of the seller that in the case of a sale he has a right to sell the goods, and that in the case of a contract to sell he will have a right to sell the goods at the time that the property is to pass; second, an implied warranty that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale; third, an implied warranty that the goods shall be free at the time of the sale from any charge or encumbrance in favor of any third person not declared or known to the buyer before or at the time when the contract or sale is made."

We have, therefore, in the case of a sale, an implied warranty that the seller is the owner of the goods which he offers for sale; that he has a right to sell the goods; that, at the time and place of delivery, the buyer shall have and enjoy quiet possession of the goods, and that the same will be free from any charge or claim of any third person. In a word, in our State there is an implied warranty that the seller has a perfect title free from encumbrances.

A reference to some of the general principles of law applicable to the situation presented by this case will be of help before taking up a discussion of the evidence presented at the trial. There is a considerable difference of judicial opinion upon the question of just when the right of action of a vendee arises for a breach of a warranty of title. It would seem that if the vendor did not have a good title when the sale was made, there was an immediate breach of his covenant. Some courts have taken the position that the warranty of title in the case of the sale of personal property rests upon the same basis as a covenant of seisin in a sale of real estate, so that if the seller in fact has no title, there is an immediate breach of the warranty, although the buyer has not been dispossessed.

This view has been severely criticised by judicial authority. "If the cause of action arises before eviction or claim made by the superior title, it may be that the statute of limitations will bar the buyer's right to recover on the warranty before he is aware that it has been broken. Moreover, if the buyer can sue at once, it is very difficult to say what damages he ought to be given. If he is allowed the value of the property, he may get not only its full value in this way, but continue in undisturbed possession of the property itself. On the other hand, if he is restricted to nominal damages, his remedy will be of no practical value to him and will indeed work him this possible injury, that

the judgment he recovers may prevent him from bringing a later suit when he has suffered substantial damages. Logically, his recovery, if his action is tried before he has been evicted, should be based on the chance of his being subsequently deprived of the benefit of what he has bought. Such a measure of damage is, however, so speculative as to be difficult of practical application:" 1 Williston on Sales (2nd ed.), 426, § 221.

In a majority of the decided cases, the rule followed is that a warranty of title to personal property is not deemed broken for the purpose of an action by the buyer, so long as the real owner has not asserted his title and the buyer consequently has not been disturbed in possession: Salle v. Light, 4 Ala. 700; 16 Annotated Cases, 62.

This view is not only well sustained by analogy, but seems to be just in itself and to be the law in Pennsylvania. The purchaser may give up possession to the paramount owner without expending money in protracted litigation, and the fact that he has done so furnishes no defence to the vendor in an action against him by the purchaser, but he does that at his peril and the purchaser will be compelled to establish affirmatively that the title of the adverse claimant was superior to that derived by him from the defendant. In other words, he will be compelled to affirmatively establish by independent proof that the title to which he yielded was paramount. A mere belief, reasonable though it may be, in the validity of the title is not sufficient. See exhaustive note in L. R. A. (1918) B, page 1138.

A purchaser of personal property who seeks to defend an action for the purchase money on the ground of a defect in the vendor's title must show an eviction or an involuntary loss of possession.

In Krumbhaar v. Birch, 83 Pa. 426, Mr. Justice Mercur said: A vendee who seeks to detain [defend] by virtue of a covenant of warranty of title, in the absence of fraud, is as much bound to prove an eviction as if he was a plaintiff in an action of covenant: Christy v. Reynolds, 16 S. & R. 258; Lighty v. Shorb, 3 P. & W. 450; Dobbins v. Brown, 12 Pa. 75; Murphy v. Richardson, 28 Pa. 292; Wilson v. Cochran, 46 Pa. 229. The purchaser of personal property who takes and retains possession thereof and uses and consumes the same cannot afterward prevent a recovery of the price he agreed to pay by showing he had bought the title of a third person."

In Morris v. Whitfield, 46 Pa. Superior Ct. 103, Head, J., says (at page 107): "Again he says he was obliged to surrender it (the property) to the proper and lawful owner. In what way was he obliged? If by any judicial proceeding against the payee or against the maker who had given notice to the payee, then such facts could and should be averred. As long ago as Krumbhaar v. Birch, 83 Pa. 426, it was said that 'a purchaser of personal property who seeks to defend an action for the purchase money on the ground of a defect in the vendor's title must show an eviction or an involuntary loss of possession.' The same principle is thus stated in Moul v. Pfeiffer, 23 Pa. Superior Ct. 280: 'A person who has given his promissory note for the purchase price of a horse cannot resist payment of the note because of alleged failure of consideration by reason of the fact that the horse had been taken from him by a judgment in replevin, where it appears that the purchaser of the horse had permitted judgment to be entered against him by default, and it does not appear that the seller of the horse had been notified to defend the action or had knowledge of its pendency.'"

The plaintiff in this case has not shown what amounts to a judicial determination of title. Reverting to Moul v. Pfeiffer, from which a quotation has just been made, a case very much in point, the defence contended that the

Montgomery v. Michelson.

horse was replevined by a third party, and, therefore, title having failed, he was not liable on the note given by him in payment. Porter, J., said there: "The record offered in evidence did not determine that the title to the horse which Pfeiffer acquired through his purchase from Ellen J. Moul was not good against all the world; it merely showed that Pfeiffer had, as against himself, by his own default, permitted Wallace to acquire title." And since the seller was not notified to defend any action or had knowledge of its pendency, he could not resist payment of the note upon the ground that the animal had been taken away from him by a judgment in replevin. See, also, Kelley v. Ichkowitz, 77 Pa. Superior Ct. 544; Catalano v. Corcoran, 86 Pa. Superior Ct. 32.

In Vibbard v. Johnson, 19 Johns (N. Y.), 77, which was an action for the purchase price, Spencer, C. J., said: "There is no doubt that in every sale of a chattel for a sound price there is a tacit and implied warranty that the vendor is the owner and has a right to sell. If, therefore, after the sale by Johnson, N. Vibbard had asserted his title to the chest of tea by suing the defendants and recovering, this would have been a good defence to the action; if the recovery was subsequent to the trial of the case between these parties, it would have furnished a good cause of action on the implied warranty. The defendants have seen fit to satisfy N. Vibbard for the tea and now set up his title in this action, but this they have no right to do. . . . It is not competent to them to dispute the title of their vendor, unless they have been charged at the suit of another person who has, after contestation, shown a better title."

Where the vendee relies on the warranty of title, express or implied, there must be a recovery by the real owner before an action can be maintained. This is in the nature of an eviction and is the only evidence of the breach of the contract in analogy to the case of covenants real.

Mere liability to loss is not sufficient—certainly not to establish a cause of action. The record in this case is totally lacking of any evidence to the effect that plaintiff has suffered a loss of either the automobile or of the purchase price. The action herein by the plaintiff is based solely on the theory that she might be called upon to pay back some part or all of the purchase money because of an action which may at some time in the future be instituted against her by her vendee. There is no testimony as to what her actual loss was or of what it might be in case of a recovery from her by the person to whom she sold the Ford coupé. All the record discloses is that she sold the automobile and received payment for it.

In O'Brien v. Jones, 91 N. Y. 193, Danforth, J., said: "Carroll had instituted no action against the plaintiff, nor had the plaintiff returned the property either to Carroll or the defendant, nor paid Carroll therefor, nor had he been asked to do so. As the case stands, the plaintiff has sold the property, received payment in part, and has a claim against his vendees for the balance of the price of that portion bought by them. It is true that Carroll commenced an action against Johnes, Henry & Co. for the property bought by them, but it does not appear that they have either surrendered it or called upon their vendor (the plaintiff here) to defend. I think, therefore, the complaint should have been dismissed upon the ground that the plaintiff had sustained no loss or damage by reason of the alleged failure of title. There is no pretence that the defendant was guilty of any fraud in bringing about the sale of this property. On the contrary, the case made upon the trial and now argued for the defendant is that of a sale accompanied by an express, as well as implied, warranty of title to the goods sold. There was evidence of both. This covenant in the sale of chattels is likened to the covenant for quiet enjoyment of land (Bordwell v. Collie, 45 N. Y. 494; Delaware Bank v. Jarvis,

20 N. Y. 226; Burt v. Dewey, 40 N. Y. 283), and when the vendee relies upon it, he must either restore to the true owner the property in question or be prepared to prove its loss through judgment obtained against him, or voluntarily, in answer to a claim made, and in that case must also affirmatively establish that the claimant was the true owner and that his vendor was without title. This rule has been sustained by authority and is now to be deemed well settled: Case v. Hall, 24 Wend. 102; Delaware Bank v. Jarvis, *supra;* Burt v. Dewey, *supra;* Bordwell v. Collie, *supra;* McGiffin v. Baird, 62 N. Y. 329. These cases go upon the principle that in an action for breach of such a contract, damages can be recovered for actual loss only, and not mere liability to loss, and are decisive against the plaintiff. The iron was delivered to him, and he in turn disposed of it for his own profit and still retains the price. Possibly the person whom he now alleges to be 'the owner may never claim and enforce his title, or if he does, the seller may settle with him,' as was suggested in Case v. Hall, *supra.* . . . In De Freeze v. Trumper, 1 Johns, 274, the true owner had recovered of the vendee the value of the property. In Case v. Hall, *supra,* the defendants, being sued for the purchase price of certain timber, set up that the plaintiff had no title to the timber and that the real owner had notified the defendants that he would hold them responsible for it; but there had been no recovery by the real owner, and the defence failed, Nelson, J., saying: 'It would be highly inequitable to permit the vendee to retain the possession or enjoy the use of the property thus acquired and put his vendor at defiance,' and, referring to an action by the vendee founded on an express or implied warranty of title, lays down the rule that a recovery by the real owner is the only evidence of the breach of contract and must be shown before such action can be maintained. This was followed in Delaware Bank v. Jarvis, *supra,* by the declaration that in a sale of chattels with such warranty of title, in the absence of an actual dispossession under a better title, no breach can be alleged without a suit and judgment at law against the title of the vendor, Comstock, J., saying: 'It has never been held that the mere want of title without eviction or judicial determination will sustain an action in such cases.' "

In the sale of personal property, there is an implied warranty of the legal ownership of the vendor and there is an action upon the breach of such warranty, but it cannot arise until the vendee shall have been deprived of the property or shall have reimbursed his own vendee. No intermediate covenantee can sue his covenantor until he himself shall have been compelled to pay damages upon his own warranty.

A strikingly similar case is that of Myers v. Bowen, 3 Colo. App. 537. The appellee there bought a horse from the appellant for $100. Two years later, he sold it to Parker, and Parker in turn sold it to Burke. One Pratt, noticing the horse, identified it as the one which had been stolen from him, took and retained possession of the horse. The action was brought by the appellee to recover the price paid. He was successful before the justice of the peace. An appeal was taken to the county court, which resulted in a judgment for the plaintiff (appellee). The case finally reached the Court of Appeals. Reed, J., in delivering the opinion of the court, said: "Counsel in argument contend that the horse having been taken from the possession of Burke, the vendee, and appellee having retained the money received for the horse, and having neither voluntarily paid back nor been made liable to pay back the money received for the horse by process of law, [appellee] had suffered no damage and could not maintain his action. According to all the authorities, there is in the sale of the chattel an implied warranty of the legal ownership of the ven-

dor, which amounts to a covenant that the vendee shall not be evicted from or disturbed in the possession of the chattel. A breach of such implied warranty gives a cause of action, but to maintain the action the vendee must be evicted from the possession of the chattel or have reimbursed his own vendee; in other words, he must have sustained damage by reason of the eviction. In this case, appellee was not injured by Pratt taking possession of the horse; Burke, the third vendee, was dispossessed. Appellee had sold the horse and received and retained the money; had not reimbursed any subsequent vendee, nor been made liable to do so. It does not appear that any claim had been [made] or was being asserted by reason of the failure of title, and we are not to presume any claim would be asserted or any damage sustained by the appellee. If the present action is sustained, he will have received pay for the animal twice, once from his vendee and again from the vendor. Of appellant's liability to his vendee, there can be no doubt, but until he is in some way made liable or voluntarily refunds the money received, he can maintain no action, having sustained no injury. The decisions of the courts, as to when and to whom the vendor is liable, are not perfectly harmonious, but the prevailing doctrine appears to be the rule as asserted in Burt v. Dewey, 40 N. Y. 283, where it is said: 'No intermediate covenantee can sue his covenantor till he himself has been compelled to pay damages upon his own warranty.' Both in equity and law this would seem to be the only just and practicable rule."

In this case there is no testimony that plaintiff has suffered any damage whatsoever. There is nothing to show that plaintiff, Montgomery, was compelled to pay over any money to the person to whom she sold the automobile. There is no evidence to show that the plaintiff has been evicted or disturbed in the possession of the automobile. Indeed, there is not the slightest evidence to show that plaintiff has been injured in the least because the automobile had been turned over by Mr. Hastings to the Camden Fire Insurance Company. No claim appears to have been made against the plaintiff by reason of any defect in her title, and until the plaintiff has in some proper manner been made liable, she cannot, in our judgment, maintain an action, having sustained no legal injury.

For these reasons, the court enters a finding for the defendant.