# The Schuylkill and Dauphin Improvement and Railroad Company *versus* Schmoele *et al.*

1. Every lease implies a covenant for quiet enjoyment. But it extends only to possession and its breach arises only from eviction by means of title.

2. A lease does not protect against entry and ouster by a tort-feasor.

3. Even the entry of the state under her right of eminent domain incurs no breach of the covenant for quiet enjoyment.

4. An action of ejectment followed by a writ of estrepement is no breach of the covenant; and this result is not produced until it reaches actual or virtual eviction.

February 17th and 18th 1868. Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Certificate from Nisi Prius: No. 39, to January Term 1866.

This was a bill in equity, filed by William Schmoele and Henry Schmoele against The Schuylkill and Dauphin Improvement and Railroad Company.

The bill charges that the plaintiffs, by lease of February 2d 1864, rented from the defendants, for fifteen years, with privilege to the lessors to renew for ten years, the exclusive right of mining coal on a tract of land in Schuylkill county, to cut timber for improvements, which were to be erected at the lessee's expense; the rent to commence October 1st 1864, at which time the lessees' improvements were to be completed; they agreed to mine at least 80,000 tons of coal from the Mammoth vein, and 40,000 tons from the Bear Gap vein; they were to pay rent at a rate per ton specified in the lease, and they were to pay in advance for 120,000 tons of coal, whether raised or not; that if the veins should prove so faulty as that the lessees could not take out the full quantity, they should be released to the extent of the faults; provided they should drive a sufficient number of gangways, &c., and if the rent should be in arrears at any time for two months, the lessors might make distress, &c.; for breach by the lessees of

any of their covenants the lease should be forfeited, and the lessors might re-enter.

The bill avers the making of extensive improvements by the lessees; that the · Philadelphia and Reading Railroad Company agreed to make a branch road to the mines; that they afterwards declined to do so, because one Munson had informed them that he claimed a large portion of the land leased to the plaintiffs, and they were thus prevented from transporting large amounts of coal, &c.; that in October 1864 Munson and others instituted an action of ejectment for a large part of the premises leased, and on the 17th of October issued a writ of estrepement, preventing the lessees from cutting timber, driving a tunnel, &c.; that the ejectment was still pending, and the estrepement prevented them from going on with their improvements, &c., still in force; that on the 27th of October 1865 the defendants notified the plaintiffs that they had failed to pay the rent, and had otherwise broken their covenants, and that it was the intention of the defendants to re-enter, unless the plaintiffs should remove the cause of forfeiture in thirty days; and after setting out other matters, and that they were prevented from carrying on their operations by the writ of estrepement, so as to comply with the requisitions of the lease, and averring that if allowed a reasonable time, and the prohibition to driving their tunnel should be removed, they would be able to mine the amount of coal stipulated for, &c.; they prayed that the defendants might be restrained from exacting a forfeiture of the lease, from re-entering the premises, and from distraining; the injunction to continue till the estrepement be withdrawn, &c., and for general relief.

A number of affidavits were filed in support of the bill, and one affidavit on the part of defendants.

A special injunction was granted, and the defendants appealed, assigning for error the granting of the special injunction.

*N. H. Sharpless* and *W. L. Hirst*, for appellants.—The ejectment and estrepement do not excuse the plaintiffs. They cannot dispute the title of their own landlords, the ejectment has not resulted in an eviction, there has been no breach of the undertaking for quiet enjoyment on the part of the defendants.

*C. E. Lex*, for appellees.—The lease is entire, and by the estrepement the plaintiffs are prevented from working part of the premises. It is therefore practically an eviction. An eviction from part of the premises demised suspends the rent as to the whole: Vaughan *v.* Blanchard, 1 Yeates 175; Kessler *v.* McConachy, 1 Rawle 435; Peters *v.* Grubb, 9 Harris 455; Smith's Landlord and Tenant 211.

The opinion of the court was delivered, February 27th 1868, by AGNEW, J.—Every lease implies a covenant for quiet enjoyment. But it extends only to the possession, and its breach, like that of the warranty for title, arises only from eviction by means of title. It does not protect against the entry and ouster of a tort-feasor. Even the entry of the state, by virtue of her right of eminent domain, incurs no breach of the covenant: Maule v. Ashmead, 8 Harris 483; Ross v. Dysart, 9 Casey 452; Frost v. Earnest, 4 Wharton 90; Dobbins v. Brown, 2 Jones 75. This being the law of the relation between landlord and tenant, it is difficult to perceive how an ejectment, even when followed by a writ of estrepement, can be deemed a breach of the covenant. The rights of a landlord would be almost worthless, if every time a pretender to title may bring an ejectment against his tenant, and issue an estrepement to stay alleged waste, he would find his rent suspended, and his remedies gone until the ejectment should be ended. But an action cannot produce this result, until it has its point in actual or virtual eviction. The tenant has a right to call his landlord into his defence, and if eviction follows, as the result of a failure to defend him, he can then refuse payment of the rent, and fall back upon his covenant for quiet enjoyment to recover his damages. Under the lease between these parties the plaintiffs were bound to pay the rent at the stipulated rate per ton for 120,000 tons per annum, whether they mined the coal or not. The plaintiffs were allowed until the 1st day of October 1864, to fit up the premises and make the improvements necessary to prepare for mining before the rent should commence running. After this time they were bound to pay the rent according to the minimum number of tons fixed. The sum thus stipulated they were bound to pay at all events, and nothing less than an eviction or a discharge would suspend or release. The clause for forfeiture and re-entry for non-payment of rent could be made effective only by their own default. But it is said to be a great hardship to be prevented from mining by the estrepement, and yet forced to pay the rent. This is so, but it is their misfortune, not that of the lessors. If the ejectment prove to be well founded they have their remedy on their covenant for quiet enjoyment, and if unfounded why should the lessors suffer? If any remedy lies against the plaintiff in the ejectment for his false plaint, certainly it does not belong to the lessors. This is the whole case of the plaintiffs in this bill as it appears at present, and it affords no ground for a special injunction.

The decree made at Nisi Prius, awarding a special injunction, is therefore reversed, and the special injunction dissolved.