# Paxson's Appeal.

1. A., a physician in J., sold his practice to B., and agreed never "to locate" again within five miles of J. to practise medicine, and further, never to practise within five miles of J. Subsequently B. agreed to permit A., on payment of $500, to "reside and locate himself anywhere within the limits of the city and county of P., for the purpose of practising the profession of medicine without any limitation or restriction whatever." To this was added the following clause : "Nothing herein contained shall refer to or include any place without the limits of the city and county of P." A. afterwards practised within five miles of J., and outside of the city and county of P., without objection on the part of B., who frequently saw him and met him in consultation.

    *Held*, that under the supplementary contract, A. was precluded from locating himself within five miles from J. outside of the city and county of P.; but was not precluded from practising without the city and county of P., within five miles of J. This, especially, in view of the construction placed upon the contract by the parties themselves, as shown by their actions thereunder.

2. An interlocutory injunction concludes no rights, and though affirmed, on appeal, by the Supreme Court, it does not follow that the Supreme Court will not, on appeal from a final decree, reach a different conclusion on the question whether or not a permanent injunction shall be granted.

April 24, 1884.     Before GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.     MERCUR, C. J., and CLARK, J., absent.

APPEAL from the Court of Common Pleas of *Montgomery county :* In Equity : Of January Term 1884, No. 334.

Bill in equity, filed September 8, 1880, between John Paxson, M. D., complainant, and Thomas Betts, M. D., defendant, praying for a preliminary injunction to restrain the defendant from practising his profession without the limits of the city and county of Philadelphia, within a circuit of five miles of Jenkintown, Montgomery county, Pennsylvania.

The court below entered a decree awarding the preliminary injunction, and an appeal by the defendant from this decree was dismissed by the Supreme Court, April 1, 1881 : Bett's Appeal, 10 W. N. C., 431.     The complainant, on February 9, 1883, filed an amendment to his bill, setting forth that the defendant had violated the terms of the injunction.

The defendant filed an answer, and the cause was referred to H. K. Weand, Esquire, as Master, who found the following facts : The complainant, Dr. Paxson, desiring to purchase the practice of the respondent, Dr. Betts, a resident physician in Jenkintown, Montgomery county, entered into an agreement with him on November 5, 1870, by which Dr. Paxson was to pay $2,000 for said practice, as well as for certain personal property, with the privilege of purchasing Dr. Bett's house and lot at any time between November 5, 1870, and April 1, 1871, for $6,500.     Dr. Paxson took possession of the personal property, and began active practice.     Payment of the $2,000 was made February 20, 1871 ; when, in consequence of certain conversations between the parties, Dr. Betts executed and delivered to Dr. Paxson an agreement whereby he bound himself " never again to locate within five miles of the above mentioned Jenkintown for the purpose of resuming the practice of medicine," and agreed " never in any way to practise or countenance the practice of the profession of medicine within a radius of five miles of Jenkintown aforesaid."

Afterwards Dr. Betts tried to obtain from Dr. Paxson the right to resume his practice within the forbidden limits, and on May 22, 1875, the following agreement was entered into between them : ". . . . . The said John Paxson, M. D., doth agree and consent that the said Thomas Betts, M. D., may reside and locate himself anywhere within the limits of the city and county of Philadelphia, for the purpose of practising the profession of medicine without any limit or restriction whatever, all or any preceding contract to the contrary notwithstanding on the following conditions, viz : That if on the first day of April, one thousand eight hundred and seventy-six,

the said Thomas Betts, M. D.. shall desire to continue the practice of medicine within five miles from the present residence of the said John Paxson, M. D., he shall pay to the said John Paxson, M. D., the sum of five hundred dollars. Nothing herein contained shall refer or include any place without the limits of the city and county of Philadelphia. Further, the said Thomas Betts, M. D., for his part, does agree that if he shall on the first day of April, one thousand eight hundred and seventy-six, decide to continue and pursue the practice of medicine within the limits above mentioned, he shall pay to the said John Paxson, M. D., the sum of $500, without any delay or further demand."

Dr. Betts paid the sum of $500, and opened an office at Milestown, within the city and county of Philadelphia, and from this location he practised his profession until about July 20, 1880, extending his visits into Montgomery county within a radius of five miles of Jenkintown, and constantly meeting Dr. Paxson, who had full knowledge that he was practising within the limits forbidden by the agreement of 1871.

Afterwards friends of Dr. Betts tried to purchase from Dr. Paxson the right to locate at Jenkintown or in Montgomery county, and certain agreements were actually drawn to that effect, but afterwards cancelled. In these interviews and negotiations Dr. Paxson expressly admitted that Dr. Betts had the right to practise anywhere, but that he was prohibited from locating for the purpose of practising his profession within five miles of Jenkintown in Montgomery county.

About July 20, 1880, Dr. Betts opened an office in Jenkintown and located himself there as a practising physician, having an office with a sign displayed announcing his business. This was done without the consent of Dr. Paxson.

The Master further reported: "That the true intent and meaning of the agreement of May 22, 1875, was that Dr. Betts should be allowed to locate himself anywhere within the limits of the city and county of Philadelphia for the purpose of practising the profession of medicine without any limitation a restriction whatever, except that he was not to locate himself outside the limits of the city and county of Philadelphia, and within five miles of the borough of Jenkintown for that purpose.

"That in locating himself in Philadelphia, and practising medicine in Montgomery county the defendant has not as a matter of fact violated any of his agreements.

"That said defendant in opening an office in Jenkintown for the purpose of practising his profession did as a matter of fact violate his agreement.

"That the Master cannot assess any damages against the

defendant as none were shown to have been sustained by reason of any unlawful act on his part.

"That as Dr. Betts has violated his agreement by opening an office in Jenkintown an injunction should be granted against him to restrain him from so doing, and that as he has not violated any agreement by merely practising his profession, that part of the injunction already issued which restrains him from so doing should be dissolved."

Exceptions were filed to this report by Dr. Paxson on the grounds: that the Master erred in his construction of the agreement of 1875, wherein he held that Dr. Betts could practise, under it, anywhere without restriction or limitation, if he did not locate himself outside of Philadelphia and within five miles of Jenkintown; and also in not awarding damages to the complainant. After argument these exceptions were dismissed by the court, FUTHEY, P. J., delivering the opinion which was inter alia as follows:

"The question arises, whether by virtue of the agreement of 1875, the defendant has the right to practice generally, without restriction as to place, by having his residence and office, or in other words, his location as a physician within the city and county of Philadelphia, or whether he is restricted so far as the five mile circuit from Jenkintown is concerned, to that portion of it within the said city and county. . . . . . What was the agreement of the parties as evidenced by this writing? We are of opinion that the Master has given it the proper construction. . . . . . By the agreement the defendant was given permission to reside and locate himself anywhere within the limits of Philadelphia, for the purpose of practising medicine without any limitation or restriction whatever, all preceding contracts to the contrary notwithstanding. Thus far the agreement is clear, that the defendant might establish himself at any point in Philadelphia, and practice from that as a centre or location in any direction without regard to the five mile restriction. The agreement proceeds, that if on the first day of April, 1876, the defendant should desire to continue the practice of medicine within five miles of the present residence of the plaintiff, he should pay plaintiff five hundred dollars, and that nothing therein contained should refer to or include any place without the limits of the city and county of Philadelphia. From this language it is obvious that the defendant was in the meantime, between the date of the agreement and the first day of April following, to practice, if he desired, as an experiment, from any residence and location in Philadelphia, and then determine at the latter date whether he desired to continue such practice within the five miles, and if he did, he should pay the sum named for the

privilege.   The clause, that nothing therein contained should
refer or include any place without the limits of the city and
county of Philadelphia, obviously refers to the place of resi-
dence or location.   The defendant was at liberty to reside and
locate anywhere in Philadelphia; he might from there practice
his profession without regard to the limitation or restriction
contained in the previous agreement.   The plaintiff was satis-
fied to allow this for the consideration of five hundred dollars,
but the defendant was not to locate at any place without the
limits of Philadelphia, and practice within the restricted limits.
The word 'place' evidently was used in reference to the loca-
tion or residence from which the defendant was to practise.
. . . . . The agreement proceeds that the defendant on his
part agrees that if he shall on the first day of April decide to
continue and pursue the practise of medicine within the limits
above mentioned, he will pay the $500 without delay or further
demand.   This clause is in a sense a repetition of a preceding
one, which says that if the defendant 'shall desire to continue
the practice of medicine within five miles from the present
residence of the plaintiff' he shall pay the plaintiff five hun-
dred dollars.   The defendant then agrees, in the clause we are
considering, to pay the five hundred dollars, if he decides ' to
continue and pursue such practice within the limits above
mentioned,' that is, within the five miles referred to in the
preceding clause, but such practice to be from a location within
the limits of the city and county of Philadelphia.   The one
part of the agreement provides that if he desires thus to prac-
tice within the five miles he shall pay five hundred dollars,
and the other, that if he decides thus to practice, he will pay
that sum.   By the construction we have thus given the agree-
ment, all parts of it are harmonized, while any other construc-
tion would render the clause 'without any limitation or
restriction whatever, all or any preceding contracts to the con-
trary notwithstanding,' a meaningless one.

   " The plaintiff does not allege that the agreement as written
does not express the meaning of the parties, but that a differ-
ent interpretation should be given to its terms from that at
which the court has arrived.   It is therefore unnecessary to
consider the testimony taken in the case which has reference
to the conduct of the parties since the date of the agreement.
We construe the agreement without the aid of this testimony,
either on the one side or the other.

   " The defendant having in violation of this agreement opened
an office in Jenkintown, Montgomery county, for the purpose
of practising his profession from there, the injunction hereto-
fore granted must be continued, but modified so as to permit
the defendant to practice without limitation or restriction

10 OUTERBRIDGE.—28.

from his present residence and location in Milestown, in Philadelphia county, or from any other location in the city and county of Philadelphia."

The court, therefore, entered the following decree: "That the said Thomas Betts, M. D., the defendant, be and he is hereby strictly enjoined from locating himself or from opening or having an office or place of business of any kind for the practice of his profession of medicine within a radius of five miles of Jenkintown . . . without the limits of the city and county of Philadelphia. This injunction is not to prohibit him from practising his profession without limitation or restriction as to distance from his present or any future loca- tion within the limits of the city and county of Philadelphia."

Whereupon the complainant took this appeal, assigning for error the decree of the court and its refusal to award damages to him.

*E. J. Fox* and *G. R. Fox* (with whom was *Wm. F. Solly*), for the appellant.—The decree of the supreme court on the appeal from the preliminary injunction, is conclusive of this controversy. The court below ruled against the appellant wholly upon its construction of the agreement of 1875. All the agreements and full affidavits were before the supreme court; and the agreement of 1875 must have been construed by them, because upon that alone the appellee claimed his right. This agreement can bear no other interpretation than that then placed upon it. The appellee wrote it himself and is estopped by it: under it he was allowed to "reside and locate himself within the limits of Philadelphia" "for the purpose of practising the profession of medicine," etc., that "not to include any place without the limits of Philadelphia"—for what? Plainly for the purpose of practising within those limits, and this is conclusively settled by the last clause of the agreement. "If he shall," etc., "decide to continue and pursue the practice of medicine within the limits above mentioned he shall pay" $500. The limits above mentioned are "within the limits of Philadelphia." He was allowed to try to get the practice within those limits before he paid his money. The agreements of 1877 (afterwards cancelled) entered into for the purpose of restoring the appellee to his right of practising—are evidence that until that time he possessed no such right. No objection to the contract can be made on the ground of public policy. McClurg's Appeal, 8 P. F. S., 51.

*C. H. Stinson*, (with whom was *H. C. Boyer*), for the appellee.—An interlocutory injunction is provisional merely, and concludes no rights: Bispham's Equity, § 403; 2 Story'

Equity § 873; High on Inj., p. 5; Kerr on Inj. Ch. II.; Clark *v.* Martin, 13 Wr., 289; Truby's Appeal, 15 Norris, 52; Hoffman's Appeal, 10 W. N. C., 401. A construction adopted and acted upon by both parties will be regarded as worked into a contract, and if not inconsistent with its provisions, may be proved by parol testimony: Wharton on Contracts, §§ 206, 633; Lehigh Coal Co. *v.* Harlan, 3 Casey, 429; Pratt *v.* Campbell, 12 Harris, 184: Gross *v.* Leber, 11 Wr., 520; Edmond's Appeal, 9 P. F. S., 222; Story's Eq., § 678; Story's Eq. Jurisp., 10th ed., §§ 152–155.

Mr. Justice TRUNKEY delivered the opinion of the court, May 19, 1884.

Little need be said in vindication of the decree. In this court the validity of the contracts dated respectively February 2, 1871, and May 22, 1875, has not been questioned, and the construction of the latter by the learned judge of the common pleas, harmonizes with the understanding thereof by the parties at the time of its execution as shown by their acts immediately following. No difference has arisen respecting the meaning of the first. Dr. Betts agreed never to locate again in Jenkintown for the purpose of resuming the practice of medicine, and that he would never in any way practise medicine within a radius of five miles of Jenkintown.

By the second contract Dr. Paxson agreed that Dr. Betts might locate anywhere within the limits of the city and county of Philadelphia for the purpose of practising medicine, without limitation or restriction, on condition that if on April 1, 1876, said Betts should desire and decide to continue the practice of medicine within five miles of Jenkintown, he should pay to said Paxson five hundred dollars without delay or further demand. After said date Betts paid and Paxson received the money. The contract contains the following clause: "Nothing herein contained shall refer or include any place without the limits of the city and county of Philadelphia." From the ability of the parties to express their meaning, as shown in all other parts of their contracts, it might be inferred that they purposely inserted this clause to create future contention. Now, one claims that it left the first contract in force as to the circuit around Jenkintown, except the part in Philadelphia; the other, that it only applies to the residence and location of Betts. Upon the face of the agreement, the point is not easily determined. Betts was granted the right to practise medicine without any limitation or restriction whatever, and after exercising that right until April 1, 1876, if he desired to continue said practice within five miles of Paxson's residence, Jenkintown, he should pay a stipulated

sum: but he could not locate within five miles of Jenkintown, without the limits of Philadelphia. The unrestricted right to practise was granted upon payment of the price agreed upon —the right to reside or locate was restricted. Obviously the right to practise in Jenkintown and vicinity would have been of greater value accompanied with an unrestricted right of location and residence. For this reason the clause may have been inserted for greater certainty of preventing Betts locating in Jenkintown. Had the parties intended to limit the practice to that part of the circuit where Betts was permitted to locate, nothing could have been easier than to have said so. Having so clearly granted the right to practise within the entire circuit and limited location as to part, it would seem that the clause of doubtful meaning referred to location as that is more advantageous to the purchaser. The contemporaneous acts of the parties may well be invoked as indicating their intention, where the meaning of a clause is doubtful. Ambiguities in a written instrument may be explained by parol evidence: Caley v. Railroad Co., 80 Pa. St., 363.

The Master finds: "For over five years the defendant acting upon his construction and understanding of the paper written by himself, had been practising medicine within the disputed limits without any objection on the part of the plaintiff who had knowledge that he was so practising. They met in attendance—in consultation and on the road, and yet we have no word of remonstrance or objection. On the contrary, when negotiations were attempted to be opened for purchase by defendant of further privileges, Dr. Paxson invariably replied that Dr. Betts already had an unrestricted right to practise, but would not grant him the right to locate." This finding was warranted by the testimony.

The bill was filed September 8, 1880. Betts was practising in the disputed territory before the time fixed for him to decide whether he would continue the practice and pay the purchase money, and with knowledge of such practice Paxson took the money, and was silent for several years. In the light of the understanding of the parties as shown by their acts, we think the intendment was, that Betts should have unrestricted right to practise his profession, but should not locate within certain limits.

We are of opinion that there is no error in the ruling respecting damages.

At the argument, the plaintiff put much stress on the affirmance by this court of the decree for interlocutory injunction. No rule is better settled than that an interlocutory injunction is provisional and concludes no right. But on appeal the affidavits and testimony must be returned that this court may

re-hear and decide the case on its merits, that is, on its merits with reference to the matters upon which the court below granted or refused the interlocutory injunction. In cases of appeal from a decree refusing, or granting, a preliminary injunction, the general rule is to express no opinion upon the merits of the case, but merely say whether we think the discretion of the court was rightly exercised: Hoffman's Appeal, 10 W. N. C., 401.

Dr. Betts, in July, 1880, in flagrant violation of his contract, located in Jenkintown for the purpose of practising medicine, and so announced to the public. The court of common pleas made a decree enjoining him until final decree, from practising medicine without the limits of Philadelphia, within a circuit of five miles of Jenkintown, which, on his appeal, was affirmed. Had he proposed to remove his location without said limits, and called attention to his right to practise there, when located elsewhere, perhaps either in the court below, or in this court, the interlocutory decree would have been of different character. Be that as it may, it concluded no right. The plaintiff then, as now, claimed the defendant had no right to practise within the limits defined in the decree.

Decree affirmed and appeal dismissed, at the costs of the appellant.