# Trimmer v. Berkheimer, Appellant.

*Nuisance—Private nuisance—Abatement—Spout from overhanging roof.*

An overhanging roof with a spouting attached thereto which discharges water onto the land of an adjoining owner is a private nuisance, and it may be abated by the injured person on his own motion without resorting to legal proceedings, if that may be done without a breach of the peace.

An owner has no right to accumulate and carry the water from the roof of his house onto the lot of an adjoining owner, and if he does so, the adjoining owner may adopt the means most available and least prejudicial to the offender in turning it back on to the latter's premises.

*Trespass—Nailing boards across neighbor's windows—Landlord and tenant—Damages—Evidence.*

Where an owner of land nails boards across the windows on the wall of his neighbor's building next to his own lot, and the neighbor puts in skylights to give light to the tenant who occupied the premises, the trespasser cannot be charged with the cost of the skylight, inasmuch as the injury was to the tenant, and not to the landlord.

The implied covenant of quiet enjoyment in a lease only covers the conduct of the lessor or those holding title paramount.

In an action of trespass where the defendant is charged with several trespasses, one of them for throwing down a brick wall, and the trial judge withdraws this particular trespass from the consideration of the jury on the ground that there was a dispute as to the ownership of the land on which the wall was located, evidence of vexatious conduct of the defendant in connection with the wall is inadmissible for the purpose of establishing either compensatory or punitive damages.

Argued March 9, 1915.    Appeal, No. 2, March T., 1915, by defendant, from judgment of C. P. York Co., Aug. T., 1913, No. 29, on verdict for plaintiff in case of Alice Trimmer v. Samuel E. Berkheimer.    Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Trespass to recover damages for injuries to a building.

The five alleged trespasses were as follows:

1. Tearing off spouting from a building owned by the plaintiff.

2. Obstructing windows in the plaintiff's building by nailing boards across them.

3. Causing surface and rain water to flow on to plaintiff's lot of ground by removing board from the plaintiff's building and by means of a trough and a spout projecting through one of the windows in the plaintiff's building.

4. Breaking windows in plaintiff's building.

5. Pushing down a brick wall which plaintiff was causing to be erected.

At the trial the following offers were made:

The court charged in part as follows:

"You will remember, first, in regard to this first count, that the evidence showed—and it is not denied by the defendant—that the spouting complained of as being torn off, twisted, bent or broken, was placed on the building on the land of the plaintiff at the instance of the defendant, and remained there as described to you by the plaintiff and her witnesses. You will remember the description of the manner in which it was torn off. It has not been denied by the defendant that he tore the spouting off that building; nor has it been shown to you that the building was anywhere else than in her enclosure, or on the land of the plaintiff. But the defendant seeks to justify his action in tearing the spouting off, as was described to you by the witnesses, by saying that it was a nuisance. It is but proper for me to say to you that the law provides an ample means for the abatement of a nuisance; and it is the duty of all citizens before they take the law in their own hands to avail themselves of those remedies which legislation has given to them, and not to invade the rights, either personal or real, of other persons, except in extreme measures."

"Mr. Keesey. We now offer to prove that the plaintiff drained the water from the roofs of buildings erected

on her land on to the lands of the defendant; that the defendant complained to her; that she took no effective means to prevent the water from running on his land, but erected spouting which did not carry the water away; that the water continued to drain on the defendant's land, to his great damage; and that the methods used by the defendant to get rid of the rain water were the least injurious to the plaintiff's property which could have been adopted by him. For the purpose of establishing a legal nuisance, which the defendant had a right to abate by his own action; and for the purpose of rebutting any inference of actual malice, and sustaining the issue on the part of the defendant.

"The Court. The offer is overruled for the reason that, under the circumstances of this case, it can not be legal evidence; and an exception is sealed for the defendant." (4)

"Mr. Stock. We offer to show by the witness on the stand, to be followed by other proof, that the defendant boarded the four windows shut into the shop by nailing of boards against them, and driving the nails into the western wall of the building, and shutting off the light almost entirely from those four windows, and darkening the shop to such an extent as to render it useless as a shop; that these boards remained on from October 12th to March 26th of the following year; and that the plaintiff, in order to furnish the shop with light, was required to put in sky lights at a cost to her approximately of thirty dollars. This for the purpose of sustaining the second count in the statement, showing the extent of compensatory damages to the plaintiff, and to support the issue on the part of the plaintiff.

"Mr. Keesey. Objected to as irrelevant and immaterial for any·purpose in this case.

"The Court. Your proposition is all right as far as the law is concerned; but we think it is proper to admit this evidence, in view of the evidence it is proposed to follow it by. (6)

"Mr. Stock.  We at this time renew our offer, made some time previously, in which we offer to prove that the plaintiff had lost in rentals up to April 1, 1913, the sum of $10.50, owing to the condition in which the premises had been placed by the acts of the defendant,—For the purpose of sustaining the issue on the part of the plaintiff.

"Mr. Keesey.  Objected to as irrelevant and immaterial; not proper evidence; not proving, or tending to prove, damage that can be recovered in this case.

"The Court.  Do you want to be heard, Mr. Keesey? We are inclined to admit the offer.

"Mr. Keesey.  We do not care to argue the question now.

"The Court.  We think it is proper legal evidence. You can bring your side out on proper cross-examination.  It is a question for the jury, if it goes that far. (Discussion and argument by Mr. Keesey.)

"The Court.  The one question as to the brick wall will be excluded.  We will admit the offer, and seal an exception for the defendant.  (8)

"Mr. Stock.  We offer to prove by the witness on the stand that the defendant, after he had knocked the wall down, that evening told the witness that if it would be rebuilt, he would knock it down, and prevent it being rebuilt.  This for the purpose of showing malice on the part of the defendant.

"Mr. Keesey.  Objected to as immaterial and irrelevant; not tending to show malice.

"The Court.  We will admit the question, and seal an exception for the defendant.  (9)

Verdict and judgment for plaintiff for $695.50.  Defendant appealed.

*Errors assigned* were (1) above instructions, (4-9) rulings on evidence quoting the bill of exceptions.

*V. K. Keesey,* for appellant.—A nuisance may be abated by any person whose property is injured thereby and entry for that purpose is justifiable: Lancaster Turnpike Co. v. Rogers, 2 Pa. 114: Rhea v. Forsyth, 37 Pa. 503; Crossland v. Pottsville, 126 Pa. 511; Com. v. Ruddle, 142 Pa. 144; Dyer v. Depui, 5 Whart. 584.

Rain water was discharged from the roofs of plaintiff's buildings into the defendant's yard and collected there, sometimes to the depth of a foot or more. This was a nuisance: Rielly v. Stephenson, 222 Pa. 252; Wilson v. McCluskey, 46 Pa. Superior Ct. 594; Gould v. McKenna, 86 Pa. 297.

For a trespass of a temporary nature the proper measure of damages is the cost of restoring the property to its former condition, unless such cost exceeds the value of the property in which case the value is the measure of damages: Helbling v. Allegheny Cemetery Co., 201 Pa. 171; Chase v. Clearfield Lumber Co., 209 Pa. 422; Lucot v. Rodgers, 159 Pa. 58; Welliver v. Penna. Canal Co., 23 Pa. Superior Ct. 79.

The proper measure of damages in this case was the cost of removing the boards which obstructed the windows: Mellick v. Pennsylvania Railroad Co., 203 Pa. 457; Hershey v. H. S. Kerbaugh, Inc., 242 Pa. 227.

The covenant of quiet enjoyment does not include a guaranty to the tenant from injury by the wrongful acts of strangers: Barnes v. Wilson, 116 Pa. 303; Moore v. Weber, 71 Pa. 429; Seely v. Alden, 61 Pa. 302.

*McClean Stock,* for appellee.—A party exercising a right to abate a nuisance can only remove or take away so much as constitutes the nuisance, and he is not justified in destroying other erections which are innocent and lawful merely because they are connected with the injurious part: Dyer v. Depui, 5 Wharton 584; Brobst v. Evans, 35 Pa. Superior Ct. 610.

The abatement of a nuisance does not justify a breach of the peace: Crosland v. Pottsville, 126 Pa. 511.

Plaintiff was not bound to attempt to remove the boards from the windows at the risk of a breach of the peace: Mellick v. Penna. Railroad Co., 203 Pa. 457.

Damages for trespass may cover the injury to rental value of the premises as they are. The actual loss of rent can be proven as an element of damages. A similar deduction in rent was allowed as damages to the landlord in action of trespass to real property: Harris v. Philadelphia, 155 Pa. 76.

OPINION BY HENDERSON, J., October 11, 1915:

The plaintiff and defendant were the owners of contiguous lots in the Borough of York. They were at variance in regard to the location of their division line. The trespasses alleged grew out of the defendant's assertion that the roof of the building on the plaintiff's land at the rear of the lot overhung his lot and discharged water in large quantities thereon. The acts charged against the defendant in the statement of claim are: (1) that he removed spouting from the plaintiff's building; (2) that he closed four of the windows on the side of the building next to his lot by nailing boards across them; (3) that he caused rain water to flow onto the plaintiff's lot by removing a board from the plaintiff's building, thereby permitting the water to flow onto the plaintiff's premises; (4) that he broke windows in the plaintiff's building; (5) that he pushed down a partly constructed brick wall along the line of the plaintiff's lot. These trespasses are charged to have been committed at different times between September 11, 1912, and April 21, 1913. The defendant claimed that the plaintiff's eave-spouting was on his premises and that it constituted a nuisance in discharging water from the roof of the plaintiff's building onto his lot, and evidence was offered to support that allegation in justification of his conduct in removing the spouting. The first and second assignments of error relate to the charge of the court and the answer to the defendant's fourth point bearing on the

right of the defendant to tear off the eavespouting under the circumstances claimed by him. After citing the evidence offered by the plaintiff as to the taking away of the spouting the court said in the charge: "Nor has it been shown to you that the building was anywhere else than in her inclosure or on the land of the plaintiff. But the defendant seeks to justify his action in tearing the spouting off, as was described to you by the witnesses, by saying that it was a nuisance. It is but proper for me to say to you that the law provides an ample means for the abatement of a nuisance; and it is the duty of all citizens before they take the law in their own hands to avail themselves of those remedies which legislation has given to them, and not to invade the rights, either personal or real, of other persons, except in extreme measures." In the use of the language contained in the first part of the quotation the court evidently had reference to the walls of the building, for there was evidence from which it might have been concluded that the eave of the plaintiff's building projected over the line of her lot and that the spouting on the building was on the defendant's property. It was not contended by the latter that the foundation of the building encroached on his premises but that the roof and spouting projected, as a consequence of which projection the water from the roof of the building was cast onto his lot. It was on this state of facts as contended for by him and on the advice of his counsel that he removed the spouting, and this act he defended on the ground that a nuisance may be abated by anyone whose property is injured thereby. The right of a person to abate a private nuisance injurious to his property on his own motion without resorting to legal proceedings if that may be done without a breach of the peace cannot be doubted. Text-book authorities and decisions of the courts furnish abundant support to this proposition. Among the cases in our own State are Dyer v. Depui, 5 Whar. 584; Rhea v. Forsyth, 37 Pa. 503. It will not be disputed

that an overhanging roof with spouting attached thereto which discharges water onto the land of an adjoining owner is a nuisance: 3 Blackstone Com., pp. 216-217. The jury was not instructed in regard to this feature of the defense, but on the contrary the clear import of the foregoing excerpt is that a private nuisance may not be abated by one injured thereby; that he is bound to resort to the law for redress of the injury. The authorities referred to and many others which might be cited make it clear that it is not necessary in all cases to resort to an action at law or a proceeding in equity to remove a nuisance; that this may be done by the party aggrieved. He takes the risk, of course, of being able to show that a nuisance exists as a matter of fact. If he is mistaken on this point he is liable to damages, but where he is justified by the circumstances he may act on his own motion in a peaceable manner.

In the offers contained in the third and fourth assignments the defendant sought to show that the plaintiff drained the water from the roofs of her buildings onto his land; that he complained to her; that she took no effective means of preventing the water from so running; that the removal of the bottom board of the plaintiff's shop of which the plaintiff complained afforded the most practicable means of disposing of this water and the one which did the least injury to the plaintiff. That an owner has no right to accumulate and carry the water from the roofs of his house onto the lot of an adjoining owner is clear: Gould v. McKenna, 86 Pa. 297; Rielly v. Stevenson, 222 Pa. 252. If water was so turned onto the defendant's lot the plaintiff could not object if the injury was obviated in a manner most practicable and doing the least injury to her. The defendant had the right to introduce evidence to support his allegation that the water from the buildings was unlawfully discharged onto his lot and that he adopted the means most available and least prejudicial to the plaintiff in turning it back onto her premises.

In connection with the plaintiff's evidence showing that the defendant nailed boards across the windows on the wall of her buildings next to his lot evidence was admitted to prove the cost of skylights which the plaintiff put in the roof of the building made necessary as she claimed by the defendant's interference with the windows, and also the amount of a reduction in rent which she allowed her tenant, who occupied the premises, because of his complaint that the light was obstructed by the defendant's action. The measure of damages for a trespass of a temporary nature is the cost of restoring the property to its former condition unless such cost would exceed the value of the property in which latter case the value is the measure of damages: Lucot v. Rodgers, 159 Pa. 58; Chase v. Clearfield Lumber Co., 209 Pa. 422; Hershey v. Kerbaugh, 242 Pa. 227; Williver v. Penna. Canal Co., 23 Pa. Superior Ct. 79. Actual compensation for the injury is the result aimed at. In this case the light was excluded by boards nailed across the windows. What the owner did was not to remove the boards but to adopt a new plan of lighting the building involving the cost of constructing skylights. This was not restoration to the former condition. The cost of the skylights is not the proper measure of damages for the injury complained of. If the defendant had locked the door of the premises and carried away the key it would hardly be contended that the owner could construct a new door at a price fixed by himself and charge the trespasser with the cost thereof. No more could he adopt the plan resorted to in this case and charge the expense to the defendant. The injury to the tenant's enjoyment of the property did not create a right in the landlord. Nothing in the case shows any liability of the latter to the tenant for the wrongful act of a third person. Generally speaking, the implied covenant of quiet enjoyment in a lease only covers the conduct of the lessor or those holding title paramount: Barnes v. Wilson, 116 Pa. 303; Dobbins v. Brown, 12 Pa. 75;

Moore v. Weber, 71 Pa. 429. Whatever loss the tenant sustained was an injury personal to himself for which he had a right of action, but no liability of his landlord to him resulted from the defendant's conduct. In any event the defendant could not be fixed for a tenant's loss without an inquiry into, and determination of, the amount of such loss.

The claim for damages for throwing down the brick wall built by the plaintiff was withdrawn by the court from the consideration of the jury on the ground that there was a dispute as to the ownership of the land on which the wall was located and the plaintiff's title had not been established. The wall was broken down on April 21, 1913. All of the other trespasses set forth in the declaration occurred a considerable time before that. The controversy about the wall having been taken out of the case the evidence with reference thereto had no retrospective effect and was not admissible for the purpose of establishing either compensation or punitive damages. The evidence included in the ninth assignment could have no bearing on the case except as applied to the brick wall and was not relevant on that subject inasmuch as the whole controversy about the wall was eliminated. The plaintiff could not recover compensatory damages under the ruling of the court and of course could not recover exemplary damages as to that branch of the case. The effect of this evidence under the charge of the court would be to aggravate the defendant's conduct and influence the jury in estimating the exemplary damage to which the plaintiff might be entitled. As the plaintiff had not established her right to locate the wall on the ground where it was built it was a matter of no consequence whether the defendant threatened to tear it down again if it were rebuilt. It must first be made to appear that she had a right to build before the defendant could be censured for objecting to it. He claimed to own the land and if so had a right to remove the wall if that could be done without a breach of the peace. The

269, (1915).] Opinion of the Court.

defendant may have been in a very unneighborly state of mind, but that has no bearing on the case if he were not acting in violation of the plaintiff's right. If he committed a wrong his motives and feelings would be important to show aggravation and malice, but the wrongful conduct must first be made to appear: Jenkins v. Fowler, 24 Pa. 308; Smith v. Johnson, 76 Pa. 191. The defendant's conduct may have been vexatious to the plaintiff, but any injury which she may have sustained must be proved by competent evidence and in harmony with the legal principles applicable to the facts established at the trial.

We think the learned trial judge was in error in the respects considered in this opinion.

The judgment is therefore reversed with a venire facias de novo.