Shenkin v. Schermerhorn et al.

*Peter P. Zion,* for plaintiff; *Saul, Ewing, Remick & Saul,* for defendants.

GABLE, J., April 6, 1933.—This is an action brought by the plaintiff and lessee against the defendant lessors to recover damages for an alleged eviction of the plaintiff from the demised premises.

To the statement of claim filed by the plaintiff the defendants filed an affidavit of defense raising questions of law in lieu of demurrer.

On July 2, 1932, defendants leased to the plaintiff a lot of ground on premises situate and numbered 3711 Chestnut Street, Philadelphia, for three years from August 6, 1932, for the annual rent of $900 for the first year of the term and $1200 annually thereafter, payable monthly in advance.

The lease provided, inter alia, that the lessee "shall not occupy, or permit to be occupied, the demised premises other than as a gasoline service station and parking lot." The lessee further agreed "in the event of him or her, or any one resident in the premises . . . doing or allowing to be done any act or thing which shall be contrary to the rules and regulations . . . of any of the constituted state or municipal authorities, then, in that case, this lease shall, at the option of the lessor, expressed by written notice, absolutely cease and deter-

mine; the lessee hereby releasing unto the lessor any and all rights or demands whatsoever."

The lessee further agreed "at its own expense to comply with and perform all rules and requirements of municipal, state and other authority . . . with reference to the demised premises. . . ."

Pursuant to the lease, the lessee entered into possession and commenced to have certain work performed for the purpose of rendering the lot suitable for the operation of a gasoline station and parking lot.

From the averments of the statement of claim it appears that on or about August 24, 1932, the plaintiff received a communication from counsel for one Edith M. Dohan, informing plaintiff that "an injunction had been issued restraining the use of the demised premises as a gasoline service station and garage," and that he was likewise informed "by duly authorized representatives of the City of Philadelphia that he would be subject to arrest if he used the premises for the purpose for which he had leased them."

It appears from the records of the action (to which reference is made in the plaintiff's statement of claim) of Tabernacle Presbyterian Church *v.* Abraham Sharp, in Court of Common Pleas No. 2, as of December Term, 1924, No. 14608, that President Judge Stern, of that court, on April 13, 1925, granted a preliminary injunction "enjoining and restraining the defendants from constructing, maintaining or operating a public service garage at No. 3711 Chestnut Street, Philadelphia, Pa., until further hearing and order of the court."

Plaintiff further asserts that he was not, prior to August 24, 1932, informed or notified by the defendants of the existence of the aforesaid injunction, while the defendants "had knowledge or should have had knowledge" of the existence of the injunction and order.

The plaintiff, in his pleading, itemizes his various expenditures for work and labor performed and materials furnished in connection with the preparation of the lot for his use, and in addition to said items further claims the amount of an alleged depreciation in articles of personal property allegedly purchased by him in anticipation of the use of the said premises for the garage business, and likewise claims the amounts allegedly expended by him as wages to his employes for the time he occupied the demised premises. He finally alleges a loss of $1000 in the value of his leasehold; all claims appear to be based upon the alleged failure on the part of the defendants to "maintain quiet enjoyment of the demised premises by the plaintiff."

The defendants' affidavit of defense pursuant to section twenty of the Practice Act challenges the legal sufficiency of the averments in the plaintiff's pleading.

The principal questions presented for our determination are: (1) Do the facts averred by the plaintiff constitute an invasion of plaintiff lessee's right to quiet enjoyment of the demised premises for which an action may be maintained against the defendant lessors? (2) Does the restriction in the lease in favor of the lessor concerning the use of the demised premises constitute an implied warranty on the part of the landlord that the demised premises are suitable for the purposes specified in the lease, or that they will continue so? (3) Does an alleged threat or notice on the part of a third person constitute such an interference with the tenant's use and enjoyment of the demised premises, where the lessee makes no effort to use the premises for the purpose specified, or to obtain a modification of the preliminary injunction in a pending action involving the premises?

It is well established that to create or support a cause of action for breach of covenant for quiet enjoyment it is indispensable that the facts should establish

an actual or constructive eviction: Bromberger *v.* Empire Flash Light Co., Inc., 138 Misc. 754, 246 N. Y. Supp. 67.

"While it is within the power of the parties to a lease to make a covenant for quiet enjoyment which may be broken without eviction either actual or constructive, ordinarily an eviction is regarded as essential . . . the acts relied on must amount to more than a trespass or a mere interference with the beneficial use of the premises:" 36 C. J. 78, Sec. 697. The broad rule has thus been laid down that a covenant for quiet enjoyment is not broken by anything short of an actual or constructive eviction: 16 R. C. L. 769, Sec. 265; 36 C. J. 78, Sec. 697.

The only acts occasioning the alleged breach on the part of the defendant lessors of the implied covenant of quiet enjoyment, as appears from the plaintiff's pleading, are the acts of third persons. The communication from a third person, informing the plaintiff of the alleged issuance of an injunction purporting to prohibit the use of the demised premises for the purpose specified in the lease is vaguely set out in the statement of claim, no copy thereof appearing therein. The bare averment that plaintiff was informed by "duly authorized representatives of the City of Philadelphia that he would be subject to arrest if he used the premises for the purposes for which he had leased them" is clearly insufficient to justify an inference that the defendant lessors were chargeable for any act of commission or omission amounting to a disturbance of the tenant's quiet enjoyment.

Unless the contrary is expressed, every lease for a term carries an implied covenant for quiet enjoyment of the premises. This is the meaning and significance of the usual clause of "let and demise:" Hemphill et al. *v.* Eckfeldt, 5 Whart. 274; Maule *v.* Ashmead, 20 Pa. 482; Schuylkill & Dauphin Improvement & Railroad Co. *v.* Schmoele et al., 57 Pa. 271; Lanigan, to use, *v.* Kille, 97 Pa. 120; Wilson *v.* Sale, 41 Pa. Superior Ct. 566; Sahm *v.* Long, 51 Pa. Superior Ct. 428; Einfeld *v.* Shermer, 56 Pa. Superior Ct. 4; Atherton *v.* Shurtleff et al., 10 Lack. Jur. 67. See, also, Trickett on Landlord and Tenant (2nd ed.) 66, Sec. 58. This implied covenant, however, may be breached only by the conduct of the lessor or those holding title paramount. So, the lessor is not liable to the tenant because an adjoining neighbor or trespasser interferes with the tenant's quiet enjoyment of the demised premises: Dobbins *v.* Brown et al., 12 Pa. 75; Moore *v.* Weber, 71 Pa. 429; Barns *v.* Wilson, 116 Pa. 303; Shapiro et al. *v.* Malarkey, 278 Pa. 78; Trimmer *v.* Berkheimer, 61 Pa. Superior Ct. 269.

It has accordingly been said in Hastings *v.* Burchfield, 28 Pa. Superior Ct. 309, 312 (1905), quoting Jackson & Gross, Landlord and Tenant, Sec. 1005:

"If the lessee desires to protect himself in his enjoyment of the demised premises against evictions or other disturbances, by all persons having lawful title, he should obtain from his lessor an unqualified covenant for quiet enjoyment, without any interruption or disturbance by the lessor, etc., or by any other person or persons whomsoever. Under such a covenant the lessee runs no risk in regard to his lessor's title."

And further quoting from section 1006 of the same work: "A lessee, it has been held, is a purchaser pro tanto, to whom the maxim 'caveat emptor' applies."

The law, it seems, does not presume that a person covenants against the wrongful acts which strangers, in ignorance or malice, might commit, unless such covenant expressly appears from the written grant or demise. The defendant lessors were not liable for interference by any third persons with the tenant's possession or business, especially since it appears that the plaintiff has not been ousted and no wrongful act of the landlord appears: 36 C. J. 68, 70, Sec. 689.

The landlord is not liable for a threatened interference which does not actually occur: Rosenthal *v.* Hudson & M. R. R. Co., 173 N. Y. Supp. 99 (where a lessor who served on the lessee a notice that the city had given notice that all encroachments must be removed and that the lessee's stairway would be cut off was held not liable, where no such action was taken).

The covenant of quiet enjoyment is not regarded as operating to subject the landlord to liability for the acts of strangers disturbing his tenant in his quiet enjoyment and possession of the premises: Trimmer *v.* Berkheimer, 61 Pa. Superior Ct. 269, 277 (1915); 36 C. J. 77, Sec. 696. In Girard Trust Co., Trustee, *v.* Raiguel, 93 Pa. Superior Ct. 123, it appeared that the parties at the time the lease was executed contemplated possible interference with the premises under eminent domain proceedings by reason of the construction of a bridge. A change of grade was made by a third party, but while the tenant contended that this action had so greatly impaired the use of the premises "that it became practically impossible for the defendant [lessee] to conduct his business," no part of the demised premises was actually taken. In an action to recover rent due, it was held that judgment was properly entered against the lessee for the balance due for the remainder of the term upon his removal. Cunningham, J., said (at page 128):

"Defendant has doubtless been injured in the enjoyment of its leasehold by the act of a third party, for which plaintiff was not responsible, but that fact does not relieve it from its covenants under the lease." See, also, 16 R. C. L. 767, Sec. 263; 42 L. R. A. (N. S.) 774, et seq.

The notice given lessee by a third party of the existence of a preliminary injunction issued in 1925, and the alleged threat to cause the arrest of the plaintiff for his intended use of the demised premises, were acts for which the defendants were in no manner responsible. They acted entirely on their own behalf in giving such notices or warnings, and apparently the plaintiff made no effort to determine whether it was within the power of these third parties to carry out the threat, or whether he could properly conduct his business without actual obstruction or interference through any proper and authorized municipal or civil authority. A landlord cannot be charged with evicting his tenant because the latter's beneficial use of the property was obstructed or prevented by third parties who acted entirely on their own behalf: Shapiro et al. *v.* Malarkey, 278 Pa. 78 (1923).

"The acts of the owners of adjacent property not sanctioned or authorized by the lessor cannot constitute a breach of the lessor's covenant for quiet enjoyment:" 16 R. C. L. 768, Sec. 263.

What conduct, then, is required to justify an action for the landlord's breach of his covenant for quiet enjoyment?

The required eviction may be either actual or constructive; but the acts relied on must amount to more than a trespass or a mere interference with the beneficial use of the premises. So it has been held that inducing authorities to refuse the lessee a liquor license is not a breach of the covenant for quiet enjoyment: International Trust Co. *v.* Schumann, 158 Mass. 287, 33 N. E. 509. Even an entry by the lessor, although wrongful and unlawful, has been held not to constitute a breach of covenant, unless it is shown that the act was in the nature of a total or partial eviction: Avery et al. *v.* Dougherty, 102 Ind. 443, 2 N. E. 123.

The entire subject is ably and exhaustively reviewed and the applicable authorities collected in an annotation in 62 A. L. R. 1257. Of course, as above stated, to constitute an eviction it is no longer necessary that there should be a manual or physical expulsion or exclusion from the demised premises or any part thereof: 36 C. J. 262, Sec. 988; Wasserman *v.* Levy, 29 Dist. R. 55. It is

necessary, however, in order to constitute a constructive eviction that the landlord by some intentional act or omission substantially interferes with the beneficial enjoyment or use of the demised premises. The act or omission complained of must be that of the landlord and not merely that of a third person acting without his authority or permission: 36 C. J. 270, Sec. 1001.

Was the preliminary injunction complained of an effective disturbance of or interference with the plaintiff's enjoyment of the demised premises?

Since plaintiff in his pleading incorporates, by reference, the record in the equity proceeding in Court of Common Pleas No. 2, we have examined the court's opinion in that action, filed April 13, 1925. Judge Stern there said, in part:

"The present application is merely for a preliminary injunction and the object of such an injunction is to preserve the status quo pending a more complete and final determination of the controversy. In view of the decision in Prendergast et al. *v.* Walls et al., 257 Pa. 547, and the fact that prima facie the immediate neighborhood is at least predominantly residential, even though it may exhibit some signs of *changing within the next few years,* it would seem proper to award such injunction." (Italics ours.)

"In a proper case a preliminary injunction may be issued pending the final determination. As a general rule . . . the court may order a preliminary or temporary injunction, restraining defendant until the issue as to complainant's right to relief can be tried and disposed of:" 46 C. J. 782, Sec. 397. The remedial effect of a preliminary injunction is to a great extent preventive in character. The object of the power of the court as expressed in an injunction of this kind is not to determine any controverted right, but merely to prevent a threatened wrong: 14 R. C. L. 314, Sec. 13. So, while a preliminary or temporary injunction must be obeyed until set aside or dissolved, even though it may have been improperly issued, the grant or denial of such injunction does not amount to an adjudication of the ultimate rights in controversy and concludes no rights of the parties.

"An order granting . . . a preliminary injunction merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, defendant should . . . be restrained from exercising the rights claimed by him; and when the cause is finally tried, it may be found that the facts require a decision against the party prevailing on the preliminary application, and the order may be modified in the final judgment giving to the respective parties that order or judgment which the rules of equity require:" 32 C. J. 374, Sec. 633.

In Com. *v.* Simon et al., 6 D. & C. 93, 95 (1925), Gordon, Jr., J., said:

"The fundamental difference between the nature of preliminary and final relief is clearly marked and well settled by the authorities. The sole object of a preliminary injunction is to preserve the *status quo* and not to destroy it: Farmers' R. R. Co. *v.* Reno, Oil Creek & Pithole Ry. Co., 53 Pa. 224; Schlecht's Appeal, 60 Pa. 172; Kutz *v.* Hepler, 3 Foster 54 [1 Schuylkill Legal Rec. 357]; Newhart *v.* Sampsel, 2 Dist. R. 647; Chester Traction Co. *v.* Phila., W. & B. R. R. Co., 174 Pa. 284. It is granted before the chancellor has had an opportunity to fully hear and determine the issues of fact in the case. Its function is cautionary, and the considerations which operate to frame it are in no true sense remedial. These are well stated in the section of Corpus Juris which deals with this subject, 32 Corpus Juris, 20. . . ."

An interlocutory injunction is provisional and concludes no right: Paxson's Appeal, 106 Pa. 429 (1884). See, also, Gemmell et al. *v.* Fox et al., 241 Pa. 146, 151; Winston et al. *v.* Ladner et al., 264 Pa. 548, 550; Casinghead Gas Co. *v.* Osborn, 269 Pa. 395, 397.

It may well be that upon application to dissolve the preliminary injunction against the use of the premises for the operation of a garage the complainants in that proceeding may be barred from final injunctive relief by their laches in failing to press the action to a final and conclusive hearing.

"We think no motion to dissolve the preliminary injunction was necessary under the circumstances; that at best it would be purely formal. It is straining things very much to insist that after three years and six months a preliminary injunction is still in force, and solely for the reason that a formal motion to dissolve was not made:" Judge Drew, in Edwards, etc., *v.* Hughey, 72 Pitts. L. J. 599 (1924).

It might also well be held that the preliminary injunction was directed against and limited to the garage then (in 1925) proposed to be erected on the premises. In such case, the injunction would not be extended so as to have the force and effect of a final injunction granting general relief for the future in any action seeking to enjoin a similar use of the premises: Anderson *v.* Council of Associated Building Trades, 99 Pa. Superior Ct. 100, 105 (1930). The power of modification of a decree in a so-called preventive injunction is inherent in the court which granted it and may be made, if in its discretion it believes the ends of justice would be served by a modification, or where the law has changed or been modified, or where there is a change in the controlling facts upon which the injunction rests.

The fourth appeal in the much-litigated Ladner et al. *v.* Siegel (No. 4) case (298 Pa. 487, 148 Atl. 699, 68 A. L. R. 1172 (1930)) was from an order modifying an injunction against the erection of a garage in an "exclusively residential" section of the City of Philadelphia. The opinion by Kephart, J., is instructive (page 495):

"While the decree in such action is an adjudication of the facts and the law applicable thereto, it is none the less executory and continuing as to the purpose or object to be attained; in this it differs from other equitable actions. It operates until vacated, modified or dissolved. An injunction contemplates either a series of continuous acts or a refraining from action. A preventive injunction constantly prevents one party from doing that which would cause irreparable damage to his neighbor's property rights. The final decree continues the life of such proceeding, not only for the purpose of execution, but for such other relief as a chancellor may in good conscience grant under the law. . . . It [the injunction] was to remain so long as the court felt that protection necessary to complainant's rights, or until conditions demanded a modification of that protection or its entire removal. . . ."

After discussing the changes in the Pennsylvania law following upon the issuance of the first injunction, the court said:

"An injunction decree does not create a right; it protects the right of the owner to the enjoyment of his property from injurious interference by the uses of other land. The right protected is an attribute of property existing through the application of common law principles. A decree preventing its injury does not give to the complaining party a perpetual or vested right either in the remedy, the law governing the order or the effect of it. He is not entitled to the same measure of protection at all times and under all circumstances. A decree protecting a property right is given subject to the rules governing modification, suspension or dissolution of an injunction. The decree is an ambulatory one and marches along with time affected by the nature of the proceeding." See note in 68 A. L. R. 1180.

It is not at all clear that under the circumstances, had the plaintiff undertaken to use the demised premises for the purpose specified in the lease, he

would have been subjected to any liability for contempt. To the contrary, see Anderson *v.* Building Trades, supra. It does not appear that any reasonable attempt was made by the plaintiff to occupy the premises for the desired purpose; and the plaintiff apparently refrained from taking any steps towards the procuring of or calling upon defendants to procure a determination of the present validity or continued enforceability of the injunction issued in 1925.

At the time of the execution of the lease there was no relationship requiring the exercise of uberrima fides between the landlords and their prospective lessee; there was no trust relationship between them. The lessee took the property caveat emptor. There existed no warranty express or implied that the premises would be fit for the use or purpose for which they were rented. The lessee was chargeable with quite the same constructive notice of the injunction affecting the demised premises as were the lessors. No superior knowledge or means of knowledge on the part of the lessors appears from the pleading. The defendants were not parties to the injunction proceeding, nor was the injunction directed against them. Cf. Scully et al. *v.* Massey et al., 17 D. & C. 363 (1932). No inference of fraud or unfair dealing can be drawn from the averments in the statement of claim.

The plaintiff is chargeable with knowledge that the law may, in the interests of public policy, health or welfare, require a change in the purposes for which the premises are used or occupied, and the burden rested upon him to ascertain the availability of the premises for the use which he intended to make of them. It is for the lessee to ascertain whether the premises are adaptable to the purposes for which they are desired, and whether they lawfully can be used for such purposes in the condition in which they are: Borden *v.* Hirsh, Trustee, 249 Mass. 205, 143 N. E. 912, 33 A. L. R. 526. In Lanigan, to use, *v.* Kille, 97 Pa. 120, 127, 128, the court said:

"A tenant, who, upon his own motion and for his own purposes, erects a building or other improvement upon a leasehold, certainly cannot recover the value thereof from the lessor in event of an eviction. In such case, the rule of *caveat emptor* would apply. It was his own folly to build upon another's land. . . . . However careless a man may be as to title in ordinary leases, it is well to understand that, when a lessee seeks to improve demised premises, the rule of *caveat emptor* applies, and he would do well to see that his lessor has title. And if not satisfied therewith, he may further protect himself by apt words in an express covenant."

What is there said as to title applies with perhaps greater force to the question of availability of the premises for the use intended. While we recognize the distinction observed in some jurisdictions between a defect in the premises of a physical character which renders them unavailable for the use intended, and a defect due to a legal objection, in so far as the same render the landlord liable as for breach of covenant of quiet enjoyment: Fenning *v.* Laskas et al., 191 App. Div. 374, 181 N. Y. Supp. 567 (1920) ; 36 C. J. 81, Sec. 700; this distinction has not been established or recognized in this state. It is here uniformly held that "the fact that the lease designates the use to which the premises are to be put does not imply a warrant that they are or will continue to be fit for such use:" 36 C. J. 46, Sec. 660, and cases cited; Girard Trust Co., Agent, *v.* Tremblay Motor Co. et al., 291 Pa. 507 (1928) ; Davis *v.* Pierce, 52 Pa. Superior Ct. 615; Graham *v.* Hay, 81 Pa. Superior Ct. 594. There is no implied warranty between landlord and tenant that the demised premises are suitable for the purposes for which they are leased: Federal Metal Bed Co. *v.* Alpha Sign Co., 289 Pa. 175, 180.

The description of part of premises as "the garage" was held to raise no implied warranty that it is or will continue to be fit for garage purposes: Barnett *v.* Clark, 225 Mass. 185, 114 N. E. 317 (1916).

"Stipulations prohibiting certain uses of premises in leases are not the same as covenants granting the premises for specific uses. . . .:" Shepard, Trustee, etc., *v.* Sullivan et al., 94 Wash. 134, 135, 162 Pac. 34.

We have considered certain other points upon the determination of the questions of law advanced, but do not consider them sufficiently important to require separate extended discussion, inasmuch as in our opinion the above authorities lend ample support to the conclusion that plaintiff has failed to disclose a sufficient cause of action.

However, as to the necessity for abandonment of the premises (which is not here pleaded) as a prerequisite to an action for breach of covenant of quiet enjoyment, see note in 75 A. L. R. 1114. As to the propriety of the measure of the damages claimed by plaintiff, see annotation in 62 A. L. R. 1257, 1311; Lanigan, to use, *v.* Kille, supra; annotation in 64 A. L. R. 907.

The questions of law raised by the defendant are sustained. It is adjudged that the statement of claim fails to disclose a sufficient legal cause of action against defendants.